G. B. SHAW *et al.* v. E. J. STEWART *et al.*

1. MECHANICS' LIEN—*Building Deemed Completed, When.* Where the abandonment of work upon a building is caused either by the consent or fault of the owner, the building is to be deemed completed for the purpose of filing a mechanics' lien.

2. SUB-CONTRACTOR—*Building Deemed Completed.* If a contractor permanently abandons his work upon a building before completing the same under his contract, the sub-contractor may, if not inequitable, consider the building as completed for the purpose of filing a lien thereon.

3. ———— *Sub-Contract—Presumption.* A person making a sub-contract is presumed to make it knowing the agreement of the principal contractor; but a subsequent agreement between the owner and the contractor cannot be set up to the sub-contractor's disadvantage.

*Error from Harper District Court.*

THIS action was brought to enforce mechanics' liens upon certain property in the city of Anthony, Harper county. The facts are as follows:

J. T. Harris entered into a contract with E. J. Stewart on the 9th day of November, 1885, to erect for Stewart a two-story frame building upon lots 1 and 2 in block 46 of the city of Anthony, for the sum of $1,500. Harris, under the contract, was to furnish all the materials and do all the work necessary to its construction. To secure the faithful performance of the contract, Harris entered into an undertaking with sureties to said Stewart, in the sum of $2,000. Immediately after the execution of the contract and bond, Harris commenced to erect the building contracted for, but not having the materials to build the same, entered into a sub-contract with plaintiff in error, G. B. Shaw & Co., on the 16th day of November, 1885, by which G. B. Shaw & Co. contracted to furnish to said Harris lumber and other building materials to the amount of $693.31, to be used in the construction of the building. Pursuant to the contract, G. B. Shaw & Co. furnished to Harris lumber, etc., in said amount, to be used, and which was used, in the erection of the building; of which sum only $82.31 has ever been paid by Harris to G. B. Shaw & Co., leaving a balance due from Harris, contractor, to G. B. Shaw & Co., the sum of $611. The said materials were furnished by plaintiffs in error, G. B. Shaw & Co., to Harris between the 16th day of November, 1885, and December 16, 1885. Harris continued the work of erecting the building until about the first week of December, 1885, when he stopped work, temporarily. He did some more work upon the building during the month of December, 1885, but finally, on or about the last week of that month, wholly quit work and abandoned the building in an unfinished condition. The contractor, J. T. Harris, refusing to further proceed with the erection of said building, and having abandoned the erection of the same, G. B. Shaw & Co., on the 3d day of February,

1886, served upon E. J. Stewart a statement of a lien upon the lots and building as sub-contractors, and filed the same on said day in the office of the clerk of the district court of Harper county. On the 26th day of March, 1886, to further protect their lien, G. B. Shaw & Co. filed in the office of the clerk a verified statement of a lien, as sub-contractors. On the 8th day of May, 1886, G. B. Shaw & Co. filed in the office of the clerk of the district court of Harper county a petition to foreclose the lien aforesaid; making E. J. Stewart the owner, J. T. Harris the contractor, Costa & Ghio, A. D. Moore, R. W. Catlin, J. M. Slaybaugh, Martin Fox, W. C. Comer, A. J. Hansbery, J. B. Rinehart, J. M. Hansbery, J. F. Tuttle, and James Archibald, sub-contractors, and H. W. Lewis, mortgage lien-holder, parties defendant. On the 19th day of July, 1886, E. J. Stewart filed his answer, setting up among other things that Harris did not complete the building, abandoned it, and that the lien was filed prematurely. Afterward, on October 30, 1886, E. J. Stewart filed his amended answer, which set up in a more definite manner the same defenses contained in his original answer. Shaw & Co., on the 12th day of November, 1886, filed a reply. On the 8th day of May, 1886, Costa & Ghio, originally defendants in this action, brought an original action upon their mechanics' lien against the property, making all the defendants in error herein defendants, and in addition thereto made these plaintiffs in error, G. B. Shaw & Co., defendants. On the 12th day of January, 1887, upon motion of defendants, the two actions of G. B. Shaw & Co. v. E. J. Stewart *et al.*, and Costa & Ghio v. E. J. Stewart *et al.*, were by order of the court consolidated as one, with the title of the same as G. B. Shaw & Co., and Costa & Ghio plaintiffs v. E. J. Stewart *et al.*, defendants; all further proceedings were had under the last-mentioned title. All of the other sub-contractors answered in the consolidated action, setting up their respective liens by way of cross-petitions, but they have filed no petition in error in this court. Defendant H. W. Lewis defaulted in the action after being personally served. Personal judgment was rendered against J. T. Harris, de-

fendant, April 20, 1887, upon both the amounts claimed by G. B. Shaw & Co. and Costa & Ghio, in their favor respectively. On the 19th day of January, 1887, E. J. Stewart filed an amended answer in the consolidated action, which set up the same defenses as his former answers. On the 19th day of January, 1887, plaintiffs in the consolidated action filed their replies to answers of Stewart and other defendants. On the 12th day of January, 1888, the action came on for trial before the court, a jury being waived; plaintiffs introduced their evidence in support of the allegations in their petitions filed, and rested their causes. Thereupon, on January 13, 1888, defendant E. J. Stewart demurred to the evidence of plaintiffs G. B. Shaw & Co., and Costa & Ghio. The trial judge, on January 16, 1888, sustained the demurrer to the evidence of plaintiffs, and rendered a judgment in favor of defendant E. J. Stewart, and against them, to which ruling plaintiffs objected, and excepted at the time. At the same time the court overruled E. J. Stewart's motion for judgment on the pleadings. On the 16th day of January, 1888, plaintiffs filed motions for a new trial in said action, which motions were overruled. The plaintiffs excepted, and bring the case here.

*Shepard, Grove & Shepard,* for plaintiffs in error.

*Geo. E. McMahon,* for defendant in error E. J. Stewart.

The opinion of the court was delivered by

Horton, C. J.: E. J. Stewart is the owner of lots 1 and 2 in block 46, in the city of Anthony. On the 9th day of November, 1885, he entered into a written contract with J. T. Harris, by which it was agreed that Harris should erect a two-story frame building on the lots for $1,500. Harris was to furnish all the materials and labor for the building. To secure the faithful performance of the written contract, Harris executed to Stewart a written undertaking with two sureties in the sum of $2,000. G. B. Shaw & Co. furnished lumber, under a contract with J. T. Harris, which was actually used

in the building, of the value of $693.31, of which $82.31 only has been paid. Costa & Ghio furnished hardware, under a contract with J. T. Harris, which was used in the building, of the value of $108.33, none of which has been paid. Harris commenced the construction of the building soon after the date of his contract, but quit work and abandoned the building in an unfinished condition late in December of 1885. Shaw & Co. filed their lien for lumber on the 26th day of March, 1886. Costa & Ghio filed their lien for hardware on the same day.

The trial court sustained a demurrer to the evidence of the plaintiffs, interposed by Stewart, upon the ground that the liens of the plaintiffs were prematurely filed. The question presented by the record is, where a contractor refuses to proceed with his contract and abandons a building before its completion, that he has contracted with the owner to build and complete, can a sub-contractor, who has furnished materials under a sub-contract with the contractor, which are used in the building, treat the building as completed at the time the contractor abandoned it, and file his lien for materials without further delay? It is contended in support of the ruling of the trial court, that the right of the plaintiffs is purely a statutory right; that the remedy depends upon the existence of the right and that the right of the plaintiffs to file their liens depended upon the existence of certain conditions precedent, among others, the completion of the building and the filing of the statutory statement within sixty days after its completion. (Comp. Laws of 1885, ch. 80, §§ 631, 632.) If there had been no permanent abandonment of the construction of the building by the contractor, we would be compelled to affirm the ruling of the trial court. (*Davis v. Bullard*, 32 Kas. 234; *Seaton v. Chamberlain*, 32 id. 239.) In the Davis case it was said:

"It is our view, however, that as between the owner of the property and the contractor and sub-contractor, the contractor and the sub-contractor should be considered as substantially one and the same person with reference to the completion of

the building, and therefore that the building should be considered as completed when and when only the contractor has completed his part thereof. No privity of contract exists between the owner of the building and the sub-contractor; but the sub-contractor's rights are based simply and solely upon his contract made with the contractor. The contractor, and not the owner of the building, is the sub-contractor's debtor, and the sub-contractor has no right to claim that the building has been completed until the contractor under whom he claims has such right."

But upon the facts of this case, the ruling of the trial court that the liens of the plaintiffs were prematurely filed, because the building was not fully completed, cannot be sustained. Such a construction of the statute is too technical and too harsh against persons furnishing materials as sub-contractors to be used in buildings. It is said in Kneeland on Mechanics' Liens, § 65, that —

"There are circumstances under which performance by the contractor is excused, and he may maintain a lien under a *quantum meruit* for the work done, or under the contract for the proportional amount of performance rendered. The claimant will be entitled to the benefit of a lien if the failure was caused either by the consent or fault of the owner."

All the authorities sustain the proposition that if the abandonment of the work upon the building had been caused by Stewart, the owner of the property, plaintiffs would be entitled to their liens, as the abandonment of the work would be deemed a completion of the building for the purpose of filing such liens. (*Catlin v. Douglas*, U. S. C. C., Kas., 33 Fed. Rep. 569; *Trammell v. Mount*, Sup. Ct. of Texas, 4 S. W. Rep. 377.) Now it is well settled by the authorities, that the equities of the persons performing labor and furnishing materials for buildings, are superior to those of either the contractor or the owner. The abandonment by the contractor of the work upon the building ended his contract with the owner. The sub-contractors were without fault. The effect of the failure to go on with the work was to prevent the plaintiffs from

1. Mechanic's lien—building deemed completed, when.

furnishing any more lumber or hardware, and their contracts with the contractor were also at an end. The owner had in his building their materials. If the non-completion of the building had been by the consent or fault of the owner, the liens for materials used in the building would not be prematurely filed, although there had been no completion of the building. In such a case, the letter of the statute could not be invoked to defeat its beneficial and equitable purpose. So, in this case, as the non-completion of the building was caused by the act of the contractor, if the liens were not filed within the letter of the statute they are clearly within the spirit of the statute, as it would be grossly inequitable to hold that the plaintiffs are absolutely barred of all rights to the lien law, because the work on the building was permanently abandoned without their fault. The foreclosure of a mechanics' lien under the statute is an equitable proceeding, in which the powers of the court are evoked to mould the remedy, within the provisions of the statute, to suit the circumstances of the case. In this action the equities are with the plaintiffs. They furnished all the lumber and hardware used in the building, and ought not in justice to be prevented from acquiring and enforcing their liens because the contractor abandoned his work. It was said in *Davis v. Bullard*, supra :

*2. Sub-contractor —building deemed completed.*

"If, however, the contractor should abandon the work for any cause before completing the building under his contract, it is possible, and even probable, that the sub-contractor may then, if not inequitable, consider the building as completed, and obtain liens thereon within four months thereafter by complying with the provisions of §§ 631 and 632 of the civil code. But so long as the contractor has not completed the work under his contract, but is still at work on the building under his contract, the building cannot be considered as having been completed, either as to the contractor or any subcontractor."

In *Henderson v. Sturgis*, 1 Daly (N.Y.), 336, it was decided that —

"Where a sub-contractor is prevented from performing the

whole of his contract with the contractor by reason of the failure of the latter, and an assignment by him of the contract for the benefit of his creditors, *held*, that he may acquire and enforce a lien for the value of his labor and materials performed and furnished up to the time when he was prevented."

Jones on Liens, vol. 2, § 1438, thus states the law:

"The owner's or contractor's abandonment of the work upon a building is to be deemed a completion of it for the purpose of the filing of mechanics' liens by sub-contractors, material-men, and laborers. It would be inequitable and unreasonable, and contrary to the spirit of the law, to hold that parties are absolutely barred of all rights to the lien law where the work is prematurely stopped or abandoned without fault of such parties. Such a construction would place material-men and laborers at the mercy of the dishonesty, fickleness, or misfortunes of the owner or contractor."

Again, there was evidence before the court tending to show that to complete the building when it was abandoned by Harris it would have cost the owner $250 only; therefore he was not only protected by the bond executed by Harris, but the amount necessary to complete the building was much less than the value of the materials furnished by the plaintiffs. We refer to this evidence as showing equities favorable to the plaintiffs. Further than this, there was some evidence before the court that Harris could not have performed his original contract with Stewart, because the latter frequently made changes therein. Of course, if Harris was prevented from carrying out the original contract on account of changes by Stewart, the latter cannot invoke the letter of the statute to defeat the liens which were filed. A person making a sub-contract is presumed to make it knowing the

3. Sub-contract —presumption.

agreement of the principal contractor, but no subsequent agreement of the principal contractor can be set up to the sub-contractor's disadvantage. (Overton on Liens, § 553.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings, in accordance with the views herein expressed.

All the Justices concurring.