Argued Oct. 11, decided Oct. 17; rehearing denied Nov. 20, 1911.

## SARCHET *v.* LEGG.

[118 Pac. 203.]

MECHANICS' LIENS—LIEN NOTICES—TIME FOR FILING—"COMPLETION."
1. A lien is not allowed for the construction of a sidewalk called for in a building contract, and the completion of the building, within Section 7420, L. O. L., fixing the time for filing lien notices after the completion of the work does not depend on finishing the sidewalk.

MECHANICS' LIENS—LIEN NOTICES—TIME FOR FILING.
2. Where the testimony showed that the contractor was never seen at the building after August 14th, when the owner accepted it, oral evidence that work was done on the building in September or October, unsupported by any memorandum showing when the work was done, did not fix the date when the work was done, within Section 7420, L. O. L.

MECHANICS' LIENS—STATUTES—CONSTRUCTION.
3. The mechanics' lien statute should be liberally construed in favor of laborers and materialmen to protect them.

. MECHANICS' LIENS—LIEN NOTICES—TIME FOR FILING—"COMPLETION."
   4. Where the rights of the owner, who relied on the completion by the
contractor of the building, and paid the contract price, are involved, the
fastening of an electrical switch or the placing of a pipe through a wall
should not be regarded, in determining the time of the completion of
the building, within Section 7420, L. O. L.

MECHANICS' LIENS—LIEN NOTICES—TIME FOR FILING—"COMPLETION."
   5. Refusal by the architect to approve the contractor's work is imma-
terial, in determining the time of the completion of the work, within
Section 7420, L. O. L., when the owner accepted the building.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by A. H. Sarchet, Linneville & Meyers,
The Ross Company and Mason, Percy & Strickler against
Hattie E. Legg, to foreclose alleged mechanics' liens. The
defendant, Hattie E. Legg, entered into a contract with
W. A. Ridgen, whereby he stipulated to furnish the
material and to construct for her a building on her lot in
Pleasant View addition to Portland. Ridgen sublet the
plastering of the house to the plaintiff, A. H. Sarchet, the
plumbing to Linneville & Meyers, partners, and the
cement work to B. C. Ross. The latter obtaining from
Mason, Percy & Strickler, a corporation, material that was
used in the structure. The value of the cement and the
agreed price of the work so underlet, not having been
fully paid, lien notices were filed against the defendant's
real property by Linneville & Meyers, October 4, 1909, for
$211; by Mason, Percy & Strickler, October 9th, for $27;
and by Sarchet, October 11th, for $97.50. The latter
instituted this suit, making the other lien claimants co-
defendants, who, answering, interposed cross-complaints
to foreclose their liens.

Answers to the several complaints were filed by Mrs.
Legg, and the cause being at issue was tried, whereupon
each claimant was awarded the sum respectively demand-
ed, with interest from the time the notice was filed, and
$1 as clerk's fees. There was also allowed attorney's fees

as follows: Sarchet, $35; Mason, Percy & Strickler, $25; and Linneville & Meyers, $50. From this decree, Mrs. Legg appeals.                REVERSED: SUIT DISMISSED.

For appellant there was a brief and an oral argument by *Mr. J. F. Boothe.*

For respondents there was a brief over the names of *Mr. C. A. Sheppard* and *Mr. John B. Moon,* with an oral argument by *Mr. Sheppard.*

MR. JUSTICE MOORE delivered the opinion of the court.

The only question involved is whether or not the lien notices were filed within the time limited. In order to create a lien, the original contractor must, within 60 days after the completion of his contract, and all other claimants must within 30 days after the completion, alteration, or repair of a structure, or after he has ceased to furnish materials therefor, file with the clerk a claim, etc., Section 7420, L. O. L. Neither of the claimants herein being an original contractor, it is insisted that the notices were not filed within 30 days after the completion of the building, or after the claimants ceased to furnish materials therefor, and such being the case an error was committed in foreclosing the alleged liens.

D. B. Fleckinger, an architect, who prepared the plans and specifications of the building and supervised its construction, testified that Ridgen did not do any work on the house after August 1, 1909, asserting that it was completed at that time, and that about two weeks thereafter Mrs. Legg accepted the building and paid the contractor the remainder due. This witness says he did not accept the house because of inferior workmanship, but that Mrs. Legg acquiesced in the defective handiwork, contrary to his orders. That, in order to connect a boiler to be installed in the building with a range, Ridgen was required to extend a pipe through a wall, which work he never performed, saying:

"The owner and the contractor had mutually agreed to cut it out entirely from the plans and specifications."

Fleckinger, on cross-examination, in referring to the performance of labor after August 14, 1909, when the building was accepted by the owner, testified as follows:

"I employed the subcontractors to come on and finish some work that didn't seem to be incorporated in Ridgen's contract, and which from his standpoint he refused to do."

He further stated upon oath that after Mrs. Legg paid for constructing the house, he had this piece of pipe put through the wall, but could not state whether it was in August or September, 1909. H. C. Ross, whose employe put in the pipe to connect the range and the boiler, in fixing the time when the work was done, testified as follows:

"To the best of my recollection, it was in October; I could not say without looking up the records."

On cross-examination he was asked:

"Do you know what time in October you did this work?"

And he replied:

"Not without getting the records."

Q. "Don't know whether it was the middle or fore part of the month. It may have been after the middle of October?"

A. "It may have been."

Q. "Was any one living in the house when you did this work?"

A. "My understanding is there was a tenant in both apartments. I was not at the house, but I do remember the tenants ringing up and complaining that the work was incomplete, and wanting to know if I had the contract."

S. C. Jagger, an electrical engineer whose employee wired defendant's building, testified that on October 7, 1909, Ridgen notified him that the wiring in the attic

should be rearranged, and that a switch had been omitted from a bedroom and an electric light from a newel post, and that this work, which was required under his original contract, was completed on that day, saying:

"Rigden was on the job at the time."

This witness says he remembers the day this work was done because of having received from a customer a sum of money, the payment of which was noted at that time in his daybook. No daybook was produced, however, to substantiate the fact. Mrs. Legg testified that the light on the newel post was put in long prior to the time stated, but that the switch in the bedroom might have been put in later. Her daughter, Bessie, testified that she never saw Ridgen at the building after the settlement had been consummated on August 14, 1909.

1. The testimony also shows that some cement work, specified in Ridgen's contract, was omitted, and has never been performed. It does not appear, however, that such work was to have been any part of the house, and might have been the construction of a sidewalk, for which no lien is allowed: *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 150 (44 Pac. 390). It cannot, therefore, be said that the completion of the building depended upon finishing the cement work.

2. The electrical switch and the newel post light asserted to have been put in October 7, 1909, and the pipe placed through the wall, which the architect says may have been done in August or September, but which Ross asserts was performed in October, and possibly after the middle of that month, are relied upon to extend the completion of the building, so as to authorize the filing of liens not later than October 11, 1909. Jagger's sworn statement that "Ridgen was on the job at the time" the electrical work was completed convinces us that he unintentionally erred in fixing October 7th as the day the

labor was performed; for the testimony shows that after August 14, 1909, when the house was accepted, Ridgen was never again seen at the building. When real property is to be incumbered with a lien, which attaches to property without the owner's consent, the particular day of the performance of the work relied upon to extend the completion of the building ought not to be left in doubt, as it is by the testimony of Ross. No attempt was made to show by any memorandum when this work was performed, though he intimates that a record thereof was kept, without which his testimony is too vague and indefinite to fix the particular day when the pipe was placed in the wall.

3, 4. In order to protect laborers and materialmen, our statute makes ample provision, and should be liberally construed in their favor, on the ground that the enact- ment is remedial. Where, however, the rights of an owner, who, relying upon the completion of the building, has paid the contract price, or of an innocent grantee, of the premises, become involved, such trifling things as the fastening of an electrical switch or the placing of a pipe through a wall should not be regarded as incidents in the completion of a building, but as repairs: *Coffey v. Smith,* 52 Or. 538 (97 Pac. 1079) ; *Crane Co.* v. *Ellis,* 58 Or. 299 (114 Pac. 475).

5. The refusal of the architect to approve the work performed by Ridgen is immaterial, for, so far as disclosed by the evidence, Fleckinger was only an agent, and his principal, Mrs. Legg, could disregard his advice, and do as she pleased about accepting the building. She exercised this privilege August 14, 1909, when she paid the contractor all the money to which he was entitled, except $95, which sum he received September 15, 1909.

The house was substantially completed when it was completed, and the lien claimants by vigilance could have

discovered that fact; but they waited, expecting to receive their pay from Ridgen, and, after learning that he had absconded, they seek to establish claims against the property; but as they were not watchful they are not entitled, under the circumstances detailed, to liens, and hence the decree is reversed, and their several suits dismissed.

REVERSED: SUIT DISMISSED: REHEARING DENIED.