Submitted on briefs without argument December 10, decided December 16, 1913.

## FUDGE *v.* BILGER.

(136 Pac. 876.)

**Mechanics' Liens—Proceedings to Perfect—Completion of Work.**

Where one employed as a carpenter by the day to erect a building quit work on September 12th, and on September 26th filed a statement to preserve priority of claim as against attaching creditors, and on the 23d of January following did additional work on the building, and furnished materials at the request of the occupant without the knowledge of the owner, no rights accrued under the statute for the relief of mechanics by reason of a notice of lien filed January 24th.

From Yamhill: WILLIAM GALLOWAY, Judge.

En Banc. Statement by MR. JUSTICE MOORE.

This is a suit by Jacob Fudge against John Bilger, C. T. Myers, Bertha May Myers, C. C. Shumway, Lester Potter, Yamhill Milling, Power & Light Company, a corporation, and the Charles K. Spaulding Logging Company, a corporation, to foreclose an alleged mechanic's lien.

The facts, as far as thought to be material herein, are that in May, 1912, the defendants C. T. Myers and Bertha M., his wife, being the owners of a tract of land in Sheridan, Oregon, commenced the erection

thereon of a dwelling in the construction of which they engaged the plaintiff, Jacob Fudge, and the defendant John Bilger as carpenters, agreeing to pay each $4 a day for his services. Myers and his wife executed to the defendant Lester Potter a mortgage of such land to secure the payment of $1,550 and interest at 10 per cent from August 19, 1912, which mortgage was duly recorded July 21st of that year. Fudge and Bilger on September 26, 1912, pursuant to the provisions of Section 7435, L. O. L., but evidently without occasion therefor, as prescribed in the statute, filed in the office of the county clerk of Yamhill County separate sworn statements, showing the labor theretofore performed by each on such building, the value of which services, after deducting all payments made on account thereof, amounted to $84.50 and $128, respectively. Notices of lien for material furnished to be used in such building were duly filed by claimants, at the dates and for sums as follows: C. O. Shumway, September 28, 1912, $614.79; Chas. K. Spaulding Logging Company, a corporation, October 3, 1912, $79.15; and the Yamhill Milling, Power & Light Company, a corporation, October 3, 1912, $36.29—which liens, after having been perfected, were severally assigned to the defendant Potter. The plaintiff, after filing such sworn statement, performed further labor on the building, and also furnished material to be used in the construction thereof; the last service having been rendered January 23, 1913. The following day he filed a notice of lien, wherein he claimed to be due him $90.10, after deducting all just offsets and counterclaims, and thereafter commenced this suit for the purpose above named; the complaint being in the usual form.

The answer of the defendants C. T. Myers, Bertha M. Myers, and Lester Potter admits most of the averments of the complaint, and for a further defense alleges *inter alia* that the dwelling in question was com-

pleted September 12, 1912, and on the 26th of that month the plaintiff filed a pretended notice of lien, a copy of which was attached to the answer, that the services performed by the plaintiff January 23, 1913, were rendered without the order or direction of Myers or his wife, or of any person acting for them, and that the work was done and the material furnished in an attempt to create a lien after the time therefor had expired.

The reply put in issue the allegations of new matter in the answer, and, the cause having been tried, resulted in a decree as prayed for in the complaint, and the defendant Potter alone appeals. Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

REVERSED.

For appellants there was a brief over the name of *Mr. W. O. Sims.*

For respondent there was a brief over the name of *Messrs. Simpson & Lewis.*

MR. JUSTICE MOORE delivered the opinion of the court.

A copy of the sworn statement filed by the plaintiff September 26, 1912, shows that between June 10, 1912, and September 12th of that year, he labored on the building 39 days, which service, at the stipulated price, amounted to $156, on account of which he received only $67.50, thereby leaving due $84.50. A comparison of this statement with plaintiff's sworn itemized account, which is made a part of the complaint, shows that, in order to make the former specification coincide with the latter computation, the services so rendered must necessarily include a charge of $3.60 for nine hours of labor performed September 13, 1912, so that the sworn statement should have been to the effect that

the claim for services was for labor performed on the building from June 10, 1912, to September 13th of that year, both days included. The other charges for labor appearing in the itemized account after September 13, 1912, are as follows: "Oct. 24, five hours, $2.00; Jan. 23, 1913, two and one-half hours, $1.00; material furnished $.60." No evidence was offered tending to show that plaintiff performed any labor October 24, 1912, for which a charge of $2 was made in the itemized account. The only testimony received of services rendered after September 13, 1912, related to the labor performed and the material furnished January 23, 1913, for which charges of $1 and of 60 cents were respectively made.

John Bilger, as plaintiff's witness, in answer to the inquiry: "Along in September some time, was there any arrangement or agreement made with Mr. and Mrs. Myers in regard to stopping the labor on this house?" replied, "Was before that. We worked off and on there, whenever we had time. When we left there to go to Mr. Tripp's the understanding was that we were to come back to build a woodhouse. Q. It was the agreement that you were to come back and complete that work? A. That was my understanding." This testimony was corroborated by that of plaintiff.

Orville Yocom, who was living in the building in question when the last work thereon was performed by plaintiff, in referring to the time when such services were rendered, testified as defendant's witness as follows: "I don't know exactly about the date of that, but we had him come down there and do some plumbing work, and he remarked that there were some thin places that would probably be leaking as soon as it started to rain, and he said if it did, if I would just tell him about it, he would come down and fix them. It started to rain, and I met him and told him that it

was leaking. He came down and fixed that and put these few weather-boarding on, took a frame down from around the chimney.''

Jennie Yocom, the wife of the preceding witness, in answer to the question: ''Were you present in the house at the time Mr. Fudge came there to do some repair work?''—referring to the last work the plaintiff did on the building, replied: ''I was present at the time he came to the back door and spoke about doing that work. He asked if he might see where the leak was, and I asked who had sent him to do the work, and he didn't answer. He said Mr. Yocom had told him it was leaking. I told him we were authorized to have no work done on the house, and that was all of the conversation we had.''

The testimony shows that the plaintiff had no contract to erect the dwelling, but was employed as a laborer at a stated daily compensation. When he filed his sworn statement September 26, 1912, he evidently thought he thereby secured a lien on the premises for the labor he had performed on the building, and for which services he had not been remunerated, but, probably learning later that such notice did not perfect the lien, he concluded that by doing more work on the building his lien might attach. He had never furnished any material for the dwelling, but on January 23, 1913, he supplied lumber and tin of the value of 60 cents and performed labor for which a charge of $1 was made. This service was not performed at the request of either Myers or his wife, but at the suggestion of Yocom, who told the plaintiff the roof was leaking. When Fudge went to the house to repair the leak, Mrs. Yocom notified the plaintiff that neither she nor her husband was authorized to employ him to do any work on the building.

It is believed that no lien for plaintiff's labor ever attached to the premises; that the house was substan-

tially completed September 26, 1912, when his sworn statement was filed; that he was not thereafter employed·by the owners of the building, nor by any agent of theirs to make repairs to the structure, and that for plaintiff's compensation for the work done and the materials furnished he must look to Yocom, at whose suggestion the services were rendered and the material supplied.

Under the facts detailed the plaintiff is not entitled to enforce the provisions of the statute enacted for the relief of mechanics: *Coffey* v. *Smith,* 52 Or. 538 (97 Pac. 1079); *Crane & Co.* v. *Ellis,* 58 Or. 299 (114 Pac. 475); *Sarchet* v. *Legg,* 60 Or. 213 (118 Pac. 203); *Schade* v. *Alton,* 61 Or. 187 (121 Pac. 898).

It follows that the decree should be reversed and the suit dismissed; and it is so ordered.

REVERSED: SUIT DISMISSED.