Argued February 6, affirmed April 2, 1929.

EASTERN & WESTERN LUMBER COMPANY *v.*
W. R. WILLIAMS ET AL.

(276 Pac. 257.)

(1)

For appellant there was a brief over the names of *Mr. Emerson U. Sims,* with oral arguments by *Mr. W. O. Sims* and *Mr. Lowell C. Paget.*

For respondents there was a brief over the names of *Messrs. Wilson & Reilly, Messrs. Lewis, Lewis & Finnigan* and *Messrs. Raffety & Pickett,* with oral arguments by *Mr. James G. Wilson* and *Mr. Arthur H. Lewis.*

ROSSMAN, J.—May 26, 1926, a corporation entitled Robnett & McClure and William and Ida Freeman, husband and wife, entered into a contract whereby the former undertook the construction of a house for the latter; the contract price was ap-

proximately $6,500. June 10th construction work commenced. At the above times the Freemans were not the owners of the lot but were vendees under a contract dated August 26, 1925, wherein the Ladd Estate Company, as vendor, agreed to convey title upon the full payment of the purchase price, $1,250. A deed delivered and recorded July 19, 1926, conveyed title to the Freemans. The appellee, Williams, is interested in this property by virtue of a mortgage executed to secure payment of the sum of $4,500; this mortgage is dated June 29, 1926, and was recorded July 19, 1926. The respondent Eastern & Western Lumber Company, claims a lien upon this property; it alleges that it supplied lumber at the request of the contractor, and filed the proper lien notice required by Section 10195, Or. L. The respondent McCracken-Ripley Co. supplied cement, bricks and tile. The respondent Charles A. Shea, is the administrator of the estate of J. F. Shea, who performed the plumbing work and supplied the necessary fixtures. Both of these two claimants dealt with the contractor and by appropriate allegations averred that they were possessed of liens by virtue of Section 10195, Or. L. All three claimants prayed for the establishment and foreclosure of their alleged liens. The decree of the Circuit Court was in favor of the three claimants, and awarded to their liens priority over the mortgage of Williams; thereupon the latter appealed. The controversy before us is between these four parties only. Appellant Williams contends that the three liens are invalid; according to his contentions (1) the lien claimants did not file their lien notices within thirty days of the completion of the building, (2) a fatal variance exists

between the allegations of respondent Shea's cross-complaint concerning his lien and the proof in support thereof, (3) the liens, if valid, can be enforced only against the building and whatever interest the Freemans had in the land when they contracted for the construction of the building.

■ We shall undertake to dispose of appellant's contentions in the above order. He contends the house was completed November 26, 1926, and that since the lien notice of the Eastern & Western Lumber Company was not filed until January 25, 1927, the Shea lien notice not until April 2d, and the Mc-Cracken-Ripley notice not until April 19, 1927, the three liens are invalid. Since the claimants were subcontractors and materialmen it was their duty to file their lien notices within thirty days after the completion of the building; two late expressions to this effect are *James A. C. Tait & Co.* v. *Stryker,* 117 Or. 338 (243 Pac. 104); *Nicolai-Neppach Co.* v. *Poore,* 120 Or. 163 (251 Pac. 268).

■ The mortgagee does not contend that the general contractors had completely performed their undertaking November 26th, but argues (1) that the building was substantially completed on that day, and (2) the undertaking was permanently abandoned on or about November 26th, and relying upon the decisions in *James A. C. Tait & Co.* v. *Stryker, supra; Shaw* v. *Stewart,* 43 Kan. 572 (23 Pac. 616); *Chicago Lbr. Co.* v. *Merrimack River Savings Bank,* 52 Kan. 410 (34 Pac. 1045); 40 C. J. 192, contends that permanent abandonment in legal effect is the equivalent to the completion of the building, in its application to the fixing of the day for the filing of a lien notice. The appellant selects the date of November 26th

because that is the day when the Freemans moved their furniture into the house and began living there. For the week or two following November 26th, the painter was still engaged in and about the house; the evidence seems to warrant the conclusion that he left about December 15th and never returned. There is no reliable evidence that any carpentry or other work was done subsequent to that day. Although the contract required Robnett and McClure to paint the roof, cover the exterior of the house with two coats of paint, and place bricks around the door and window openings, none of this work was done except the house was given one coat of paint. The brick work would have required approximately 100 bricks of a select grade, and to put them in place would have required the services of a mason and his helper for one and one-half day's time. We believe that we are fully justified in concluding that when the Freemans moved into the house November 26th, they had no intention of foregoing the above omitted items; the fact is conceded that they endeavored several times to persuade Robnett and McClure to complete these items; the latter in turn tried to induce the paint and mason subcontractors to finish their work. Robnett and McClure almost succeeded, so far as the latter was concerned, because March 3, 1927, he returned to the building and brought the necessary quantity of bricks and cement, with the intention of completing his subcontract the following day. Both he and the painting subcontractor had experienced difficulty in obtaining payment from Robnett & McClure; as a result these two subcontracts were never completed.

The precise time when the Freemans finally concluded that Robnett & McClure would not complete their contract is left in doubt. Appellant avers that November 26th that conclusion was reached, but it is evident they are mistaken because for some time after that date the Freemans were still engaged in their efforts to persuade the contractors to complete their contract. It is equally clear from the incident adverted to a moment ago that March 3d the contractors still definitely intended to finish their task. July 1st, at the latest, the undertaking was abandoned; for upon that day Robnett & McClure were adjudged bankrupts.

The following provision of the contract is significant:

"It is hereby mutually agreed that should the said contractor neglect or refuse to continue the work hereunder the owner shall have the right and privilege of giving five days' written notice to the contractor at its last known place of residence to assume charge of said construction and to complete the work and charge the costs thereof against the contractor arising out of said neglect and default."

The Freemans never gave any such a notice. January 20, 1927, Mr. Freeman signed the following statement addressed to the Eastern & Western Lumber Co.: "This is to certify that Robnett and McClure have not completed my house at 1077 Glenwood Avenue this city"; another to similar effect was addressed to J. F. Shea and bore Freeman's signature.

These circumstances persuade us that we would not be justified in concluding that the house was substantially completed November 26th. It is well settled in this jurisdiction that a contractor cannot extend the time for filing a lien by returning after the house

is substantially completed and performing a few trivial odds and ends, but in view of the important character of the omitted items and fact that both the builder and the owner regarded this house as incomplete when the work ceased in the middle of December, we do not feel justified in regarding the house as substantially complete at that time.

■ We are next asked to conclude that the completion of the house was abandoned November 26th, and that ever since that day it should be considered as complete. It is true that a man is not compelled to complete a building against his wish because at one time he was so disposed. He may change his mind, if he so sees fit, let his walls remain unpainted, let hollow places remain where he had contemplated the placing of bricks, and expose his roof to the elements without the protection of paint even though he is possessed of a definite contract which promised him all of these benefits. But, the evidence stops short of establishing that anyone so intended. The general contractors had no thought of abandoning their undertaking; their strained financial circumstances alone obstructed an apparently *bona fide* intention of faithfully completing the contract. There is no evidence that the Freemans intended to forego these items; upon the other hand they many times tried to induce the contractors to return and fulfill their contract. In their desperate efforts to induce the subcontractors to complete their work and refrain from filing lien notices Robnett & McClure obtained Mr. Freeman's signature to the formal statements of noncompletion which we have previously quoted. It will be observed that this is not an instance where the owner and his contractor intended at some indefinite

time to resume operations; here they intended to complete the structure at once; their plans were never abandoned, but the contractor was compelled to cease operations, due to his inability to finance himself.

■ Facts, which will constitute an abandonment, must include a conclusion, upon the part of the participants, to cease operations permanently, or at least for an indefinite period: *James A. C. Tait & Co.* v. *Stryker, supra; Shaw* v. *Stewart, supra; Nicolai-Neppach* v. *Poore, supra;* thus a mere cessation of labor is not an abandonment. The setting of the sun generally causes a cessation of labor for the night; unfavorable weather conditions may halt construction for a longer period; similar interruptions may come from labor troubles or the lack of materials. In each of these instances, no one has concluded to abandon the project. Similarly in the suit before us, the lack of money caused a cessation of work, but was unaccompanied with a conclusion to abandon the project. We conclude that there was no abandonment equivalent to completion.

■ Next the appellant contends that since the lien notice, filed by the claimant Shea, named I. C. Robnett and B. M. McClure as the contractors, while the lien notice received in evidence identified the party at whose request the claimant supplied the materials as a corporation entitled Robnett & McClure, a fatal variance has been uncovered. We deem it unnecessary to set forth at length our consideration of this contention. The facts before us are analogous to those dealt with in *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997), and in *Eastern. & Western Lbr. Co.* v. *Henderson,* 275

Pac. 677, decided March 26, 1929. In the former case the principles of variance were reviewed at length; in the latter case the facts were precisely similar to ours; appellant's authorities are there analyzed. It will suffice to say that in this state a variance between the allegations and the proof is not material unless it has actually misled the adverse party to his prejudice; that circumstance must be alleged and proved; no variance is material unless it amounts to a failure of proof. Sections 96, 98 and 99, Or. L. It follows that this contention of the appellant is without merit.

■ The assignments of error suggest that the liens constituted a prior encumbrance over the mortgage only upon the building and the limited interest which the Freemans had in the land when they contracted for the construction of the building; this contention is not argued in appellant's brief. Ladd Estate Company, vendors, have not appealed. It is agreed that the proper notices of intention to claim a lien were given to the latter company and to the Freemans by the materialmen. We believe that from the decisions in *Schram* v. *Manary,* 123 Or. 354 (260 Pac. 214, 262 Pac. 263), and *Randolph* v. *Christensen,* 124 Or. 661 (265 Pac. 797), it follows that the appellant is mistaken in this contention.

It follows from the foregoing that the decree of the Circuit Court is affirmed. Respondents may have their costs.                              AFFIRMED.

COSHOW, C. J., and McBRIDE and RAND, JJ., concur.