**36 P.(2d) 519**

**ALLISON et al. v. SCHULER et al.**

**No. 3939.**

Supreme Court of New Mexico.

Oct. 1, 1934.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellants.

O. E. Little, of Roswell, for appellees.

BICKLEY, Justice.

Suit was brought by plaintiffs, appellees to foreclose a mechanic's lien upon property of defendants. The defendants-appellants answering plaintiffs' complaint sought to defeat the action upon the ground that the claims of lien were not filed within 90 days after the completion of the building as required by statute. Comp. St. 1929, § 82-206. A decree was entered establishing plaintiffs' liens, and defendants have appealed, and plaintiffs have cross-appealed. The parties will hereafter be referred to as plaintiffs and defendants.

It is the contention of defendants that plaintiffs' claims of lien were filed more than 90 days after the building was substantially completed. This involves the further proposition of defendants that the construction contract was abandoned and that such abandonment is equivalent to completion.

The defendants entered into contracts with one Anderson for the construction of a building for the sum of $6,800. Plaintiffs were subcontractors, having supplied work and material under agreement with Anderson. Anderson entered upon the performance of the building contract, and the work progressed to such a stage of completion that defendants were able to occupy the same for the purpose for which it was designed, and it was complete in detail according to contract except that the contractor never furnished or installed three elevating doors to the automo-

bile driveway on the ground floor through a wall of said structure, and never furnished or installed seven wheel guards along said driveway, and never furnished or installed an iron pipe balcony rail around the balcony or well hole on the second floor of said building, and never affixed the ornamental iron grills over or about three windows of said building according to the plans and specifications. It would have been necessary to spend the sum of $462.25 in order to supply these deficiencies.

The court found from these and other facts that the building was not substantially complete; there having been no change in the physical situation between the cessation of work by the contractor on February 8, 1932, and the time of the trial on May 22, 1933.

All are agreed that "substantial completion" of a building or structure is adequate to start the running of the limitation period within which a claim of lien must be filed. See Genest et al. v. Las Vegas Masonic Building Association et al., 11 N. M. 251, 67 P. 743. In that case, there remained but seven or eight hours of one man's work of ornamental carving on the outside of the building, and it was held that the building was substantially complete. The fact that the owner occupied a portion of the building for the purposes for which it was intended was considered as having a bearing on the question. In a note to Milliken Bros. v. City of New York, 201 N. Y. 65, 94 N. E. 196, in Ann. Cas. 1912A, 908, it is said: "It seems to be a general rule that the time for filing a mechanic's lien is to be computed from the time when the work is

completed, and that the acceptance of the work in an incomplete state is not sufficient to set running the time for filing the lien. Nichols v. Culver, 51 Conn. 177 (referred to in the reported case); St. Louis Nat. Stock Yards v. O'Reilly, 85 Ill. 546; Hutchinson First Presb. Church v. Santy, 52 Kan. 462, 34 P. 974; General Fire Extinguisher Co. v. Schwartz Bros. Commission Co., 165 Mo. 171, 65 S. W. 318. And see the reported case."

We do not doubt the further statement of the note writer to the effect that the acceptance of the work by the owner may disclose an understanding that it is completed so as to *authorize* the filing of a statement for a lien thereon. Defendants put some reliance upon the circumstance that they had entered into an occupancy of the building and were using it for the purpose for which it was intended for some time prior to the trial, and that no changes or additions had been made by them after they had taken possession. The evidence shows, however, that the defendants a short time before the trial had purchased the elevating garage doors and iron banisters for the balcony with the intention of installing them. While there is evidence that defendants occupied the building there is no evidence that they accepted it as complete performance by the original contractor. Defendants quote 18 R. C. L. p. 930, "Mechanic's Liens," § 61, as follows: "The time when the contract is to be deemed to have been completed is to be ascertained from the language of the statute, from the provisions of the contract, the conduct of the parties with reference thereto, and the surrounding facts and circumstances, as well as the circumstances pointing to the time of abandonment of the work, if it has been abandoned."

In 40 C. J. "Mechanic's Liens," § 223, it is said: "When a building is completed within the meaning of the statute is a question to be determined in view of the circumstances of each case."

In considering the conduct of the parties as bearing on the question, we find that the courts not infrequently consider the facts in the light of the effect their application will accomplish. For instance, in Sarchet et al. v. Legg, 60 Or. 213, 118 P. 203, 204, cited by defendants, it is said: "In order to protect laborers and materialmen, our statute makes ample provision, and should be liberally construed in their favor, on the ground that the enactment is remedial. Where, however, the rights of an owner, who, relying upon the completion of the building, has paid the contract price, or of an innocent grantee of the premises, become involved, such trifling things as the fastening of an electrical switch or the placing of a pipe through a wall should not be regarded as incidents in the completion of a building, but as repairs."

The writer of the annotation in 64 A. L. R. at page 277, says: "There is direct authority to the effect that, in determining the question when a work is completed or abandoned, as regards the rights of parties to file or assert mechanics' liens, the court should not take a technical and narrow view, but should save to parties entitled to liens any rights they may justly have under a fair and equitable construction of the facts and the law applicable thereto."

This view has the support of decisions of this court in Lyons v. Howard et al., 16 N. M. 327, 117 P. 842, and Gaastra, Gladding & Johnson v. Bishop's Lodge Co., 35 N. M. 396, 299 P. 347. At least such is the rule when there is no contention·that the claimant does not ·belong to the class of persons who may claim the right to a lien nor that the property is such that a lien may not attach thereto.

In Sarchet et al. v. Legg, supra, the equities were with the owner who had paid the contract price and was being called on to pay a second time. In the case at bar, the owner had paid $800 on a $6,800 contract. The amounts they are called upon to pay to the subcontractors would doubtless be charged against the balance due the original contractor. Even so, there might be an assertion of liens in excess of the contract price on the balance due thereon and some hardship inure to the owner, but ordinarily the owner can protect himself. Such a possible hardship to the owner does not affect the validity of our statute. Baldridge v. Morgan, 15 N. M. 249, 106 P. 342, Ann. Cas. 1912C, 337.

The illustrations presented by defendants in support of a view of substantial completion do not parallel the situation in the case at bar. In Rice et al. v. Brown, 1 Kan. App. 646, 42 P. 396, the court thought it significant that "both parties (the original contractor and the owner) seem to treat the house as completed." In the case at bar the contractor did not claim that his contract had been performed by completion of the building. There is evidence of cessation of work by the original contractor on February 8, 1932, but it also appears that the contractor was seeking to secure finances to enable him to complete the more than 6 per cent. of the job unfinished. The defendants (owners) did not treat the contract as performed or the building as substantially completed because they were engaged in a search to locate the absent contractor in order to force him or his bondsmen to complete the building according to his contract. In Crane Company v. Ellis et al., 58 Or. 299, 114 P. 475, 476, the original contractor had led the owner to believe the building was complete and had been paid the contract price in August, but a subcontractor alleged that 2½ feet of sewer pipe was placed on October 15 so as to connect the house with the sewer, and filed his claim on October 30. By statute, claimant was required to file his claim within 30 days after completion of the building. The placing of 2½ feet of sewer pipe long after the owner had moved in and paid the original contractor was held to be mere repair work and a trifling circumstance. The court said: "The owner of the building had a right to know when the building was completed and to act thereon for his own protection. In this case the only witness, except Nickert, by whom plaintiff has attempted to establish the date of the ·completion of the work, is the contractor, to whom was paid the contract price for the construction of the building at a time when he led the owner to believe the building was completed, reserving a small amount of the contract price pending repairs of defects in construction. From this ·money the contractor should have paid those who furnished him material, and he now resorts to this trifling circumstance to compel

Ellis to pay them for him—a circumstance which we cannot overlook in determining the weight to be given to the evidence."

In the case at bar, the owner had not paid the original contractor the contract price nor been led by him to believe the building was complete, and we are not prepared to say that the failure of the contractor to furnish and install accessories amounting to the sum of $462.25 is a trifling circumstance.

In Fox & Co. v. Roman Catholic Bishop, 107 Or. 557, 215 P. 178, it was decided: "A building, as respects time for filing liens, is completed when the contractor has substantially complied with the terms of his contract, and the later work of supplying trifling items omitted or repairing defects or remedying inferior workmanship will not be considered as postponing the time limitation for filing liens."

In that case the circumstance that the employer in good faith was willing to overlook such omissions or by mistake had failed to observe them, had a bearing upon the decision. In the case at bar, there is evidence that the defendants were not willing to overlook the omissions amounting to $462.25, but, on the other hand, tried to find the contractor in order to force completion of his contract, and in his absence sought to force his bondsmen to make good the omissions or lack of completion.

Plaintiffs cite a decision of the California Supreme Court in Hammond Lumber Co. v. Barth Inv. Corp., 202 Cal. 601, 262 P. 29, 30, which is useful. In that case the contract price was $13,500 and the costs of those things necessary for its completion was $193.-

50. The trial court found that, under the trivial imperfection statute in that state, the lack of $193.50 of completion in a $13,500 building would not prevent it from being substantially completed, and denied the lien. On appeal, the Supreme Court reversing the judgment, said: "The said Ingraham, while said owner was in the use, occupation, and possession of said structure, did 95 hours' work upon said Due building, to correct and complete said electrical work in accord with the plans and specifications and the requirements of the city ordinances of the city of Los Angeles, at a reasonable cost of $193.50; that said work was all done in May and June, 1922, and was necessary to correct and complete the work in accord with the plans and specifications. * * * Neither does the amount, value, and character of the materials required to be furnished and labor performed to place the building in a completed state appear to us to be of that trivial character as to impel a holding that the claimant has thereby lost his lien. A test that has been applied in this class of cases and which has the sanction of judicial approval was thus stated in Hammond Lumber Co. v. Yeager, 185 Cal. 355, 197 P. 111: 'Are the imperfections in the performance of the work so trivial in character as to permit the contractor to recover for substantial performance?' "

If we should apply this test, we should extremely doubt that Anderson, the original contractor, could have recovered from the defendants the contract price for the building as for substantial performance with the building left in the condition it was on February

8, 1932. Plaintiffs call attention to the ratio of the omissions on the percentage basis in the California case and the case at bar where in the California case the lack of completion was 1.5 per cent., whereas in the case at bar it was more than 6.5 per cent., and we agree that the principles applied in the California case would apply with equal or greater force in the case at bar.

In so far as the court's finding that the building was not substantially completed is a fact question, we are not able to say that it is not supported by substantial evidence, and we are not able to say as a matter of law that the building was substantially completed so as to start the running of the 90-day limitation of time for filing liens.

█ █ In the annotation in 64 A. L. R. at page 276, entitled "Abandonment of construction or of contract as affecting time for filing mechanics' liens," it is said: "Where the statute requires the notice or claim of lien to be filed within a certain time after completion of the building or improvement, and the same is not completed, but work is abandoned thereon, the filing must be made within the specified time after such abandonment, the rule being that abandonment is equivalent to completion for purposes of the statute, or amounts to a constructive completion."

In 40 C. J. "Mechanic's Liens," § 224, it is said: "The abandonment of work upon a building is deemed a completion of the building for the purpose of fixing the time for filing a claim of lien."

In Hot Springs Plumbing & Heating Co. et al. v. Wallace, 38 N. M. 3, 27 P.(2d) 984,

985, we assumed such to be the proper rule of construction, deciding that "Temporary suspension in furnishing of materials pending satisfactory credit arrangement *held* not abandonment of undertaking, so as to start running of time within which claim must be filed for materials furnished prior to suspension"; and that "Suspension of plumbing work for three months *held* not abandonment of undertaking, so as to start time within which claim must be filed for work done prior to suspension, where work was done as fast as progress in construction of building permitted."

As to what amounts to abandonment, we find the following statement in the annotation in 64 A. L. R. at page 283: "Whether or not there is an abandonment within the meaning of the rule by which abandonment is deemed equivalent to completion as regards the time for filing mechanics' lien claims is often a difficult question. It has been held that abandonment of the work will not be presumed where the right to a mechanics' lien is in question, but must be established by the evidence; also, that the question whether there is a cessation of work for the time indicated, within the meaning of a statute declaring that cessation from labor for a specified time upon any unfinished building shall be deemed equivalent to a completion thereof, is a question of fact. But it seems clear that the question as to what is sufficient to constitute an abandonment, assuming that the facts are undisputed, is a question of law. And on this question, as to what may constitute an abandonment, the courts are not altogether in accord. The

Kansas court has seemingly adopted the rule of actual cessation of work as the time of abandonment, and has held that the question whether there is an abandonment does not depend on the reason for failure to proceed with the construction, such as inability to procure funds. And the time of actual cessation of work, and not the secret purposes or mental conclusions of the owner, is the time when the abandonment occurs, for the purpose of filing mechanics' liens, so that, even though the owner may have intended or hoped at some future time to continue the work, if he does not actually do so, the time for filing the claim of lien begins to run from the time when work ceased. But in Oregon, it has been held that, in order to constitute a permanent abandonment of the construction of a building, so that the same will take the place of the completion thereof mentioned in the statute, as regards the time for filing a claim of mechanics' lien on the part of a laborer or materialman, there must be not only a cessation of operation, but also an intent on the part of the owner and contractor to cease operations permanently, so as to give a fair notice of the abandonment of construction to a lien claimant, either actual or constructive. And the intention to abandon the work, in order to amount to a completion, must not be a merely secret one on the part of one of the contracting parties, of which the lien claimant has no knowledge. The provision of the California statute, declaring that cessation from labor for thirty days upon any unfinished contract or upon any unfinished building shall be deemed equivalent to a completion thereof does not

mean a clandestine stopping of actual work for the time indicated and the renewal of work without any indicia to the public that it has been stopped for such time; but the cessation must be of such character as to carry some charge of notice to a careful person."

We indicated in the Hot Springs Plumbing & Heating Co. Case, supra, that anything short of permanent abandonment would not start the running of the time within which a lien claim must be filed, and that suspension of work must be accompanied by an intention to cease work or cease furnishing materials permanently, or at least indefinitely, would be necessary to constitute abandonment. We there displayed a leaning toward the Oregon rule, and cited Eastern & Western Lumber Co. v. Williams, 129 Or. 1, 276 P. 257. That decision was shortly afterwards followed in Stark-Davis Co. v. Fellows et al., 129 Or. 281, 277 P. 110, 112, 64 A. L. R. 271. The court there declared:

"In order to constitute a permanent abandonment of the construction of the building, so that the same would take the place of the completion mentioned in the statutes, there should be a cessation of operation, and an intent on the part of the owner and contractor to cease operations permanently, or at least for an indefinite period, or some fair notice to or knowledge of the abandonment by a lien claimant, either actual or implied.

"Since the briefs were prepared in this case, this question was discussed by Mr. Justice Rossman in the case of Eastern & Western Lumber Co. v. Williams, 129 Or. 1, 276

P. 257, at page 259, where the following language is recorded:

" 'Facts which will constitute an abandonment must include a conclusion, upon the part of the participants, to cease operations permanently, or at least for an indefinite period. James A. C. Tait & Co. v. Stryker, 117 Or. 338, 243 P. 104; Shaw v. Stewart, 43 Kan. 572, 23 P. 616; Nicolai-Neppach Co. v. Poore, 120 Or. 163, 251 P. 268. Thus a mere cessation of labor is not an abandonment. The setting of the sun generally causes a cessation of labor for the night; unfavorable weather conditions may halt construction for a longer period; similar interruptions may come from labor troubles or the lack of materials. In each of these instances, no one has concluded to abandon the project. Similarly, in the suit before us, the lack of money caused a cessation of work, but was unaccompanied with a conclusion to abandon the project.' "

In the case at bar the trial court found: "d. That in order to now complete the said Mortuary or Funeral Home, according to the plans and specifications, it would be necessary to expend the sum of $462.25, and the said Funeral Home or Mortuary is, therefore, not substantially complete at this time, *and the completion of the same had not been abandoned, either by the original contractor, W. R. Anderson, or the owners, Albert H. Schuler and Edith Reed Schuler, for a period of more than 90 days prior to the filing of the plaintiffs' said liens on June 22nd, 1932, and the said owners have not yet so abandoned the completion of the said Mortuary.*" (Italics ours.)

Defendant complains that this is indefinite. This complaint is based upon the fact that the court made a finding requested by defendants to the effect: "That the *contractor* W. R. Anderson abandoned his work and his contract with Albert H. Schuler and Edith Reed Schuler to erect and construct said building, complete in detail in strict accord with the plans and specifications, and has never furnished or installed three elevating doors to the automobile driveway on the ground floor through the west side of said structure and has never furnished or installed seven wheel guards along said driveway and has never furnished or installed an iron pipe balcony rail around the balcony or well hole on the second floor of said building and has never affixed the ornamental iron grills over or about three west windows of said building according to the plans and specifications, and said contractor has abandoned all intention so to do." (Italics ours.)

These findings are not necessarily inconsistent. Furthermore, it is contended by plaintiffs that the evidence shows that the contractor Anderson left the work for the purpose of securing finances and promised to be back in 60 days and complete the job, and that the time for the commencement of the running of the 90-day period within which liens might be filed should only commence at the expiration of such 60 days and the failure of Anderson to return at that time if Anderson's intent alone to abandon

would be sufficient, which they by no means concede.

It would seem that the finding criticized by the defendants is sufficiently definite, particularly as defendants did not plead abandonment in their answer as to date thereof or otherwise. We find it unnecessary to now decide whether abandonment of construction is to be deemed completion of a building or structure, but, assuming that it is, as defendants claim, abandonment of the work is ordinarily a question of fact. In the case at bar we assume the court applied the Oregon rule cited in the Hot Springs Case and so doing was authorized to adduce from the evidence that the contractor, being in financial difficulties, ceased work and went to other parts with the intention of raising money to complete his contract; that the defendants did not release him nor waive performance, but, on the other hand, insisted on his bondsmen completing the work. Assuming, though not deciding, that abandonment of construction is the equivalent in law to completion, we are satisfied there is substantial evidence to support the court's finding that there was not such an abandonment of the work as would amount to completion.

We therefore find the contentions of defendants' counsel, though ably presented, to be without merit.

We now turn to the cross-appeal of the plaintiffs.

The trial court denied plaintiffs' prayer for personal judgment against defendants and plaintiffs have appealed from this decision.

■ The mere establishment of a lien upon defendants' property does not warrant a personal judgment against them as owners, because there was no contractual relation between them and the lienors. 40 C. J. "Mechanics' Liens," § 740, note 34. In a case note accompanying the report of the case of Alberti v. Moore, 20 Okl. 78, 93 P. 543, 14 L. R. A. (N. S.) page 1036, it is said: "In the absence of special statutory rights and remedies, the courts seem to be unanimous in denying to the subcontractor or materialman the right to a personal judgment against the owner where there was no contractual relation between them."

Notwithstanding the array of decisions cited in support of the Corpus Juris text and the L. R. A. note, plaintiffs argue that defendants are liable to them personally because, though they alleged that they had made an express agreement with the original contractor, Anderson, to furnish labor and materials for which Anderson promised to pay them, there is an implied promise of defendants to pay them, because Anderson, the contractor, is made by statute (Comp. St. 1929, § 82-202) "the agent of the owner," and that this means a general agency sufficient to bind the owner personally. It is to be noted that this section provides that the contractor "shall be held to be the agent of the owner for the purposes of this article (act)." The article or act was chapter 16 of the Session Laws of 1880, entitled: "An Act for the Enforcement of Liens." This act deals entirely with the subject of liens. Nowhere do we find language sufficient to warrant us in saying that it was the legislative intent

to authorize a personal judgment in favor of the lienor and against an owner of property who did not contract to pay and is not personally liable for the debt. All that this language means is that, where the owner's specific property is improved by labor or materials furnished at the instance of a contractor, subcontractor, architect, builder, or other person having charge of the construction of any building, etc., it shall be held that any such persons shall be held to be the agent of the owner for the purpose of imposing a lien upon such property. It is doubtless true that the proof might show that the owner had clothed any of such persons with more than the powers of the statutory agent so that such agent would have the power to contract in the owner's name for such labor or materials and so become liable therefor. But the act does not purport to bind the owner personally for the engagements of his mere statutory agents. His property alone is bound. Such property would be bound, however broad may be the agent's authority. The statute thus puts the owner in privity with the laborer or materialman for the purpose of attaching a lien to his property. But it goes no further. If the laborer or materialman asserts a contract or promise of the owner to become personally liable for the debt, he must prove that the agent had the authority to so bind his principal. Section 82-210 provides that a building or other improvement constructed upon land with the knowledge of the owner shall be held to have been constructed "at the instance of such owner" and that "the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article," unless the owner gives notice as provided by the section, "that he will not be responsible for the same." Plaintiff relies upon the language heretofore quoted as indicating an intention of the Legislature to create a personal liability upon the part of the owner. We cannot agree to this. The language of this section confirms the view that the Legislature was dealing solely with liens. If the Legislature had contemplated that the statutory agents of the owner by procuring the performance of labor or furnishing of materials for a building upon his property could not only create a lien but establish a personal liability of the owner to pay for such labor or materials, whether he had consented thereto or not, it would seem that section 82-210 or the act elsewhere would have provided to the owner a means to defeat the personal liability as well as the lien. Yet said section 82-210 merely provides a means for preventing the establishment of a lien upon the owner's property. In the case note on "Right to Personal Judgment in Action to Foreclose Mechanic's Lien," Ann. Cas. 1912A, page 129, 134, it is said: "In jurisdictions where a personal judgment is permitted in an action to foreclose a lien the right to such a judgment is of course dependent upon a contractual relation being shown between the plaintiff and the defendant against whom the personal judgment is sought."

Among the many California cases cited is Phelps v. Maxwell's C. G. M. Co., 49 Cal. 336, where the court construed a section of the California statute similar to our section 82-

210, supra; the court saying in 1874, before our statute was enacted:

"The action is brought to enforce liens claimed by the plaintiffs and others upon a quartz mill in Mariposa county, as laborers and material men, under the provisions of the Act of March 30, 1868, for securing liens of mechanics and others. The 'Maxwell's Creek Gold Mining Company,' the owner in fee of the premises, was not in possession at the time the labor was done or the materials furnished upon which the liens in question are predicated, but one Gilbert Douglass, as the lessee of the company for a term then unexpired, was in possession, and he alone caused the work to be done and the materials to be furnished. The Court below rendered judgment enforcing the liens upon the premises, including the interest of the company therein and also against the company for any deficiency remaining after the sale.

"1. The Act of March 30, 1868, as we understand it, does not authorize a personal judgment against the company, under the circumstances of this case. It provides (Section 2), that if the person causing the work to be done own less than the fee of the premises upon which it is done, 'then only his interest therein shall be subject to such lien,' unless (Section 4) the general owner in fee, having obtained knowledge of the construction or intended construction, etc., shall fail to give notice that he will not be responsible for the same—in which case the lien affects his interest also. There is no personal liability provided for in this connection; the provision found in the second subdivision of Section 10, that each claimant shall be entitled to an execution for any balance due him after the distribution of the proceeds of the sale, must be confined to those cases in which a defendant, upon general principles of law, and irrespective of the provisions of the Act, would be personally liable for the work done and materials furnished."

In the 14 L. R. A. (N. S.) 1036, note, supra, the annotator also said: "A California statute provides that failure to file a building contract makes the contract void; and that 'in such case the labor done and materials furnished by all persons aforesaid except the contractor shall be deemed to have been done and furnished at the personal instance of the owner.' This has given rise to the contention that in such cases the subcontractor had contracted directly with the owner, and was therefore entitled to a personal judgment against him. The courts, however, have held that the effect of the provision was not to create a contractual relation between the owner and subcontractor, and that a personal judgment against the owner could not be rendered."

In Ackerson v. Albuquerque Lumber Co., 38 N. M. 191, 29 P.(2d) 714, 716, we said: "In passing, we note early recognition that our statute was derived from that of California. Lee, J., dissenting in Post v. Miles, 7 N. M. 317, 34 P. 586. In fact, as adopted in 1880, and as it stands today, it is the California statute of 1872, as amended in 1873–74."

We therefore regard the pronouncements of the California courts as highly persuasive, to say the least.

Cross-appellants rely upon some language used by the territorial Supreme Court in Hobbs v. Spigelberg, 3 N. M. 357, 5 P. 529, 531, to support their contention. In that case the court said: "The statute expressly makes the defendant liable for a debt he never contracted. He is in privity of contract, by force of the statute, with every laborer who works upon his building."

The court had before it the sole question of foreclosure of a mechanic's lien. The question of lienor's right to a personal judgment was not involved. We think that all the court meant was that the statute put the defendant property owner in privity with the lienor for the purpose of supporting the claim of lien. The only other expressions of this court, which we find to bear upon the subject, is to be found in Pearce v. Albright, 12 N. M. 202, 76 P. 286, 287. The court said: "We incline to the opinion that the court below erred in ordering execution to issue against Franc. E. L. Albright if the property on which the lien attached, when sold, did not bring enough to satisfy the judgment, for there is nothing in the record to show any personal liability on the part of Mrs. Albright."

In Minor v. Marshall, 6 N. M. 194, 27 P. 481, 484, it was decided: "The indebtedness [for labor done under the mechanics' lien law] is a personal claim independent of the lien." Money's Digest.

The owner of property improved may be indebted to the lien claimant for labor and materials furnished, in which case the claimant may pursue his remedies to satisfy his claim by action to procure a personal judg-ment against the debtor or by foreclosure of lien or perhaps both. But it is manifest that, in order for such owner to be indebted to him who furnishes the labor or material, there must have been a contractual relation between them. There must have been a promise by the owner to pay, either express or implied, before there can be a debt. But such claimant may be entitled to a lien upon the owners' property improved, though the owner is not indebted to him; it may be that another (as a contractor) is indebted to the claimant. Section 82-206 requires that the claimant in his claim of lien shall state not only the name of the owner, but "also the name of the person by whom he was employed, or to whom he furnished the materials, with a statement of the terms, time given and the conditions of his contract."

It is the person with whom the contract to labor or to furnish material was made, who is liable therefor and indebted to the claimant, and against whom a personal judgment may be obtained. Section 82-215 makes it clear that: " * * * (One) to whom any debt may be due for work done or materials furnished to maintain a personal action to recover such debt against the person liable therefor."

The lien claimant may proceed against the owner's property though the debt due is the personal liability of another.

Mr. Jones in his work on Liens (3d Ed.) § 1614, puts the case very simply: "A personal judgment is not proper in a lien proceeding except against the owner or contractor who has *promised to pay* the considera-

tion for the work and labor." (Italics supplied.)

We find no promise of the defendants to pay the plaintiffs in the case at bar.

The lien statute supplies an implied consent by the owner to the improvement of his property for the purpose of imposing a lien thereon, but we see nothing in the statute which can be taken as establishing an implied promise of the owner to pay the debt of another where there is no contractual relation between the lienor and the owner and where there is existent an express promise of another to pay the debt.

Finding no error in the record, the judgment is affirmed and the cause remanded, and it is so ordered.

WATSON, C. J., and SADLER, and HUDSPETH, JJ., concur.

ZINN, J., did not participate.