FEICK v. STEPHENS et al.

In re SANDUSKY AUTO PARTS & MOTOR TRUCK CO.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1918.)

No. 3092.

1. CONTRACTS ⟨⟩321(1)—PERFORMANCE—NONPAYMENT.

While a contractor on the owner's default in payment has the right to abandon further performance and sue for damages or in quantum meruit for the value of the work done, he is not bound to do so, but has the right to keep the contract in force and refuse his assent to any repudiation or rescission and fully complete the work.

2. MECHANICS' LIENS ⟨⟩279—ABANDONMENT OF CONTRACT—PRESUMPTIONS.

A contractor's abandonment of a contract will not, where a mechanic's lien is asserted, be presumed, but must be established by evidence.

3. MECHANICS' LIENS ⟨⟩92—ABANDONMENT OF CONTRACT—FILING OF CLAIMS.

Where a contractor before he completed performance filed claims of lien, the filing of such claims did not amount to an election not to go on with the contract, but were merely precautionary steps in the attempted protection of his rights.

4. ESTOPPEL ⟨⟩58—EQUITABLE ESTOPPEL—PREJUDICE—NECESSITY.

Where neither the owner nor one holding a deed of trust on the property was misled by the contractor's filing lien claims before he completed the work, no estoppel could arise from the filing of such claims.

5. MECHANICS' LIENS ⟨⟩132(1)—PERFORMANCE OF CONTRACT—APPOINTMENT OF TRUSTEE.

Where a contractor, who had not abandoned the work and had not completed performance at the time receivers appointed in a creditor's suit took charge of the owner's property, finished the work thereafter and within four months of the date of the receivers' appointment filed his claim for a lien, the lien must be allowed under Gen. Code Ohio, § 8314, allowing four months in which to perfect liens whether the work done after the appointment of the receivers be considered unauthorized or not, for if unauthorized the appointment precluded performance and the lien claim was filed within four months after performance was rendered impossible.

6. MECHANICS' LIENS ⟨⟩157(5)—CLAIM—FAILURE TO SUSTAIN ONE CLAIM.

Under Gen. Code Ohio, § 8314, a failure to sustain one or more items in the statement of account filed by mechanic's lien claimant does not invalidate the claim where the statement gave notice of a valid claim.

7. MECHANICS' LIENS ⟨⟩152—CLAIMS—STATEMENT.

While ordinarily a mechanic's lien statement under Gen. Code Ohio, § 8314, should give notice that it has been filed within the statutory period,

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and while if the contract has been completed this would necessitate some statement showing the date of completion to be within four months of filing, the same rule does not apply when completion has been prevented.

8. BANKRUPTCY ⊜⟶458—APPEAL—PRESERVATION OF GROUNDS OF REVIEW.
Where claimant, who appealed from a decree of the District Court, which on petition to review filed by the trustee in bankruptcy and creditors disallowed his claim, took no steps in the District Court to review the finding of the referee and master disallowing a portion of his claim, that question is not reviewable by the Circuit Court of Appeals.

9. MORTGAGES ⊜⟶151(3)—PRIORITY—MECHANICS' LIENS.
A mechanic's lien takes priority over a deed of trust on the property given after the contract was entered into.

10. ESTOPPEL ⊜⟶110—EQUITABLE ESTOPPEL—PLEADING.
An estoppel to be relied on should be pleaded.

11. MORTGAGES ⊜⟶183—PRIORITY—MECHANIC'S LIEN—ESTOPPEL.
Though a contractor who received stock from a corporation for whom he was erecting a building voted for the resolution under which a trust deed was executed and the deed contained a covenant that the property was free from liens, such contractor is not estopped from asserting the priority of his mechanic's lien over the deed of trust where it did not appear that any one knew of or acted on any representation or act of his.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

In the matter of the bankruptcy of the Sandusky Auto Parts & Motor Truck Company. The claim of George Feick to a mechanic's lien, allowed by the referee, was reversed on petition to review by Edward S. Stephens, trustee in bankruptcy, and the Union Savings Bank & Trust Company of Cincinnati, and claimant appeals. Decree reversed and cause remanded, with directions.

See, also, 250 Fed. 191, —— C. C. A. ——.

In July, 1912, after appellant, George Feick, had submitted estimates, the Sandusky Auto Parts & Motor Truck Company entered into a verbal contract with him for the erection of certain buildings on its plant in accordance with certain plans. The original contract was subsequently changed. Certain alterations and delays in starting caused the agreed price to be increased from $12,576 to $15,175.50. Extras and alterations made during the construction were agreed upon. The reasonable value was approximately $3,700. Payments were to be made as the work progressed.

No time was fixed in the contract for the completion of the work or any specific part of it. By December, the work had progressed so that the plant could be operated. After that, progress was slow and with interruptions. Weather conditions prevented installation of part of the work during the winter. In March, a few items of the extra work were performed. In May, 1913, floors and foundations, which had been disturbed by the frost, were relaid.

The referee and the district judge found that none of the contract work, other than that of September, 1913, was done after the middle and 11th of May, respectively. The evidence shows that this May work was only to replace work originally done in 1912. For this replacement, no charge was made and it is not part of the claimed lien. Except for this and some small repairs made in July, no work was done by Feick after March until September 11, 1913.

Under a trust deed from the Sandusky Company to the Union Savings Bank & Trust Company, executed and recorded in March, 1913, the trust company took possession of the plant on August 15, 1913. Three days later, possession was surrendered to receivers appointed on August 18, 1913, by the state court under a creditor's bill. On September 11, 1913, while the property was in

the hands of the receivers, Feick entered the premises in order, as advised by counsel, to perfect his right to a lien. Between that date and September 19, 1913, he performed work at a cost of about $350 to $400, in completion of the original contract as amended. This work was the installation of plumbing and fixtures in an additional toilet room. This toilet room, so completed, was the only part of the factory that had not been long theretofore occupied and used. Its use was not absolutely essential to the beneficial use of the factory because of the other toilet facilities. Feick's entry was without leave of the state court or of the receivers, and his performance was without their leave or that of the district court: no one either expressly consented or objected thereto. On September 13, 1913, while the work was being done, the petition in involuntary bankruptcy was filed. Adjudication followed in October.

On September 23, 1913, Feick filed in the recorder's office of Erie county, Ohio, the affidavit and statement of account under which he claims the lien and served the requisite notice thereof. Therein he specified: "Main building, as agreed, $12,576; testing building, as agreed, $2,176.70; water-closets, as agreed, $431.80"—followed by the statement, "Last work done and contract completed September 19, 1913." The total of these three items is carried out as $15,175.50. Then follows itemization of the extras with the dates. The last items preceding those of September are the July repairs, $5, and the March material and labor.

The September plumbing work could have been done in April. Feick had delayed it because of the failure to pay him in accordance with the terms of the contract. The company, however, had made no complaint and had never requested him to proceed or to complete his contract. The only payment received by him was $3,000 of the company's stock at par, stock that subsequently became worthless.

To the petition of the trustee in bankruptcy to sell the property, under which the property was sold and liens transferred to the proceeds, Feick filed what is termed an answer, but what was treated by all parties as an intervening petition to establish his lien. By the trustee's answer thereto the intervening petition and answer of the trust company, the questions of the validity of Feick's claim to a lien and of its priority over the trust deed were raised. The referee in bankruptcy, by whom the matter was heard, held the claim to be a first lien on the property. He disallowed, however, $375 of the $15,886.27 claimed, holding that, as the appointment of the receivers prevented further performance under the contract, a lien could not be established for the September work. On petition to review the referee's order, the cause was referred to him as a special master to take and report additional testimony. Thereupon, on all the evidence taken by him as referee and as master and without any further evidence in the district court, the finding of the referee in so far as it held the lien valid was reversed and the claim to any lien was disallowed. The cause is before us on appeal from this decree.

Malcolm Kelly, George E. Reiter, and H. L. Peeke, all of Sandusky, Ohio, for appellant.

John F. Hertlein, of Sandusky, Ohio (King & Ramsey, of Sandusky, Ohio, of counsel), for Edward S. Stephens, trustee.

Healy, Ferris & McAvoy, of Cincinnati, Ohio, for Union Savings Bank & Trust Co., trustee.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1-4] 1. Appellee's contention that Feick had a right to abandon further performance under the contract because of the failure to pay in accordance with its provisions and to sue for damages or in quantum meruit for the value of the work done, or after March, even upon the contract as substantially performed, subject only to recoupment for the value

of the September work, may be conceded. But he was not bound so to do. He was not compelled to take chances that what he had done would be held to be a substantial performance of the contract. He had a right to keep the contract in force, to refuse his assent to any repudiation or rescission and fully to complete the work. Whether or not he abandoned the further performance is a question of fact. It must be established by the evidence. Abandonment will not be presumed. The delay, it is true, was great; but Feick, evidently doubting whether he would get any money, was justified in not increasing his prospective losses until compelled by some demand of the company or by self-interest, definitely to elect between completion and abandonment.

On August 5, 1913, and August 16, 1913, he filed claims of lien. They were alike, except that in the second he gave credit for the plumbing fixtures not then, installed. The filing of these claims did not amount to an election not to go on with the contract. They were merely precautionary steps in the attempted protection of his rights. In these lien claims, he did not assert either abandonment or substantial completion of the work. On the contrary, in that of August 16th, he expressly showed that it was not completed. Moreover, as neither the Sandusky Company nor the trust company was thereby misled or affected, no estoppel could arise therefrom. We concur in the finding of the referee and of the District Court that Feick had not completely abandoned the work on August 18, 1913.

[5] Feick's rights are governed by section 8314 of the Ohio General Code, in force when the contract was made, as such rights are expressly preserved by the Act of April 16, 1913 (103 Ohio Laws, p. 369). Under section 8314, filing within four months from "the time of completing such labor or furnishing such material" gives a lien from the date of the first item of labor performed or material furnished.

We concur, too, in the view adopted by the referee and the court that, at the time of the appointment of the receivers, the contract was not completed, and the implication therefrom, that the plumbing work done in September, 1913, in accordance with the original estimates and contract, except as the location of the toilet room was changed by subsequent agreement, formed a substantial part of the original contract. Whether or not this plumbing work was in any sense a separate and divisible piece of work as found by the district judge, it is unnecessary to consider; for it was specifically covered in the original estimate of cost and in the original single contract. Clearly, it was not a mere trifle left over after the contract had been deemed by the parties as finished and the work accepted as complete, for the parties never accepted it as complete or deemed it finished. In value, it amounted to something more than two per cent. of the entire cost; and, while not absolutely essential, it was valuable for the proper equipment of the plant. And, as both the referee and the district judge held, but for the appointment of the receivers and the consequent prevention of further performance, Feick would have had four months from the completion of the work in September, within which to file his claim of lien.

Whether the appointment of the receivers operated to prevent him, without their or the court's express consent, from going on with the contract, with the result that, as held by the referee and the court, the dork done in September is not to be deemed as lawfully performed, and therefore not done under and pursuant to the contract, we need not determine. As the claim was filed for record within four months of the date of the appointment of the receivers, we agree with the conclusion of the referee contrary to that of the district judge, sustaining its validity in the sum of $15,511.27 with interest.

Any other conclusion would lead to this obviously unjust result: That one who had furnished some work or labor and who had properly, at the request of the other party or pursuant to the terms of the original contract, done nothing for more than four months, would lose his right to a lien for the work done, if, after the four months, completion of the job was thus prevented. Neither text nor context of the statute necessitates this construction. On the contrary, under the liberal construction of mechanic's lien laws, which concededly prevails in Ohio, it has been there determined that a lien may be filed "within four months from the time it (the contract) was completed or the contract wrongfully put an end to by * * * the owner." Pedretti v. Stichtenoth, Ex'r, 6 Ohio Cir. Ct. R. 516, 519.

It cannot, however, be material whether the completion was prevented before or after four months from the date of the last work actually done. The statutory period for filing is four months; not four months from the time that a part of the work, which subsequently turns out to be the last part, is completed, but four months from the time that the work contracted for either shall have been completed or the completion prevented. Whether the last work before that of September was done on May 11th or 15th, as the referee and court respectively found, that is, less than four months before August 18th, or in March, as the trustee in bankruptcy asserts, that is, more than four months before August 18th, is therefore immaterial. In either case, Feick would have been justified on August 18th, but for the receivership, in postponing the filing until four months after he should have completed the entire work pursuant to the contract. Only if and when such completion was rendered impossible by the appointment of the receivers could the statutory period be deemed to begin to run.

[6] The statement of account, as filed, was sufficient. It gave notice of a valid claim. A failure to sustain one or more items in such an account, concededly, does not invalidate the claim. And, in our judgment, it is immaterial that such items are the only ones performed within four months before the claim is filed for record.

[7] While the claim should ordinarily give notice on the face of it that it has been filed within the statutory period, and while, if the contract has been completed, this would necessitate some statement showing the date of completion to be within the four months, the same rule should not apply when completion has been prevented. There is no statutory requirement that either the date or the fact of such prevention be stated. We cannot therefore deem the statement

of account invalid because the last item of the claim as eventually allowed was performed more than four months before the filing, especially when, as in this case, the statement shows clearly that that performance did not complete the work and that the contract remained incomplete until within the four months' period.

[8] Feick's failure to take any steps in the District Court to secure a review of the finding of the referee master, disallowing the claim as to $375, precludes our consideration thereof.

[9] 2. The finding of the validity of Feick's lien establishes also its priority over the trust deed of March, 1913, inasmuch as the mechanic's lien is effective as of August, 1912, unless, as argued by the trust company, Feick is estopped from asserting his priority.

[10, 11] The claim of estoppel as against bona fide holders of the bearer notes secured by the trust deed rests upon the fact that Feick, as a stockholder, voted in January, 1913, for the resolution under which the trust deed was executed by the Sandusky Company. This deed contained a covenant that "said property so conveyed is free and clear of all liens and incumbrances, and that it, the company, its successors and assigns, will forever warrant and defend the same against the lawful demands of all persons claiming or to claim the same," and a recital that the resolution of the board of directors authorizing its execution was unanimously ratified at a stockholders' meeting at which all of the stockholders were present in person or by proxy.

To dispose of this contention, it might suffice to point out that, while the facts appear from the evidence, nowhere in the pleadings is there any allegation that Feick was a stockholder or that he voted for the resolution; nowhere is the charge or defense of estoppel made; no issue thereon properly arose in the case, although, if requested, amendments to the pleadings might have been allowed.

Assuming, however, that, as evidence bearing on such an issue was received, the question is properly before us, the contention cannot be sustained. We need not consider whether under any circumstances such participation in such a transaction could estop a stockholder from maintaining his claim to priority over the trust deed for a mechanic's lien, inchoate at the time of the stockholders' meeting and ripening into a perfected lien long thereafter. For here, a vital element of estoppel is lacking; no one is proven to have known of or acted upon any representation or act of Feick. Knowledge of the statements in the trust deed does not suffice. That would demonstrate, at best, reliance upon the representations of the company and its officers that persons unnamed had authorized the covenant. Knowledge or information that Feick was such a stockholder is, in any event, essential to estop him. Of this, there is no evidence whatsoever.

The decree must be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.