STEPHENS v. UNION SAV. BANK & TRUST CO. OF CINCINNATI et al.

In re SANDUSKY AUTO PARTS & MOTOR TRUCK CO.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1918.)

No. 3102.

BANKRUPTCY ☞303(3)—PREFERENCES—EVIDENCE.

> Evidence *held* sufficient to sustain a finding that the bankrupt, at the time it delivered notes as collateral security for a pre-existing debt, was solvent, though it was adjudicated a bankrupt on a petition filed less than four months thereafter.

Appeal from the District Court of the United States for the Western Division of the Northern District of Ohio; John M. Killits, Judge.

In the matter of the bankruptcy of the Sandusky Auto Parts & Motor Truck Company. From a decree sustaining the validity of a mortgage securing certain notes held by the Union Savings Bank & Trust Company of Cincinnati and others, Edward S. Stephens, trustee in bankruptcy, appeals. Affirmed.

J. F. Hertlein, of Sandusky, Ohio, for appellant.

King & Ramsey, of Sandusky, Ohio, C. A. Neff and White, Johnson, Cannon & Neff, all of Cleveland, Ohio, and Healy, Ferris & McAvoy, of Cincinnati, Ohio, for appellees.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. This appeal was heard together with that in case No. 3092 (250 Fed. 185, —— C. C. A. ——), in which an opinion was filed this day. The trust deed to appellee, therein referred to, secured 300 notes of $500 each. Sixty-five of these notes were sold for cash. Concededly, as to the holders thereof, the lien of the trust deed is valid. In view of our conclusion that the lien is valid as to all of the notes, we need not determine whether 5 of them are to be classified with the cash notes or with the balance of the notes. These others were delivered as collateral security for a pre-existing debt, a few days less than four months prior to the filing of the petition in bankruptcy, and the validity of the lien results in giving the holders a preference.

The amount realized from the sale of the mortgaged property after the payment of prior liens, while more than sufficient to pay the first class of note holders, is not sufficient to pay both classes. The controversy therefore is between the two classes of note holders as well as between the second class and the trustee in bankruptcy.

Concededly, if the company was solvent within the definition of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) at the date of the delivery of the notes, the lien must be upheld. The referee master found solvency. The district judge said in respect to this finding:

> "We feel that the special master may have been a little sanguine in holding absolutely that the bankrupt was not insolvent in May, 1913. The margin as found by the auditors as the probable situation in May is too narrow, considering the magnitude of the company's assets and liabilities, to enable one to speak very positively."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

But he upheld the lien on the ground that:

"Reasonable diligence in inquiry when once inquiry is suggested to a creditor is all that is demanded, and it seems to us, with the light we have on this case, that the exercise of reasonable diligence by any one of these creditors to inquire would not reasonably have brought to the creditor knowledge in May, 1913, or at any time when any creditor received one of these gold notes as collateral, that the debtor was in fact insolvent."

The margin referred to by the judge, as found by the auditors, was over $72,000 based in round figures on $350,000 assets and $278,000 liabilities.

If, as the district judge assumed, the report of the auditors was approximately correct, then in our judgment the finding of the master that the company was at that time solvent must be upheld. The further fact that this margin was all that was left of a total of about $325,000 of capital paid in during the preceding 1¾ years of the company's life, and that at the time the company was losing at the rate of $2,000 a week, does not suffice to raise any question as to its solvency at that time, within the definition of the Bankruptcy Act.

Whether or not, at that time, the assets of the company, at a fair valuation, exceeded the liabilities by $72,000, or whether at that time the company was insolvent, because in the language of the Bankruptcy Act the aggregate amount of the property was not upon a fair valuation sufficient in amount to pay the debts, is fully discussed by the master in his report. Only serious doubts as to the correctness of his conclusion based upon the testimony of witnesses produced before him, as well as upon documentary evidence, could justify a reversal. From our examination of the record, however, we are led to the same conclusion and for the same reasons. Further discussion of a pure question of fact, therefore, seems to us unnecessary.

Decree affirmed.