Argued February 27, amended April 30, objections to cost bill denied May 28, 1929.

STARK–DAVIS CO. *v*. WM. B. FELLOWS ET AL.

(277 Pac. 110.)

For appellant there was a brief and oral argument by *Mr. W. Y. Masters.*

For respondents there was a brief and oral argument by *Mr. Frank H. Hilton.*

BEAN, J.—This suit was brought to foreclose the mechanic's lien of plaintiffs upon lot No. 1, Block D, in Clinton Addition to East Portland, Multnomah County, Oregon. The defendant Emile A. Abry answered the complaint, setting up the mortgage on the property and denying the validity of plaintiff's lien. Defendant Abry was awarded a decree of foreclosure for the sum of $1,400, and interest, and $125 attorney's fees with costs, subject to three liens hereinafter mentioned.

Defendant Rowell Brown & Company answered denying the validity of plaintiff's lien and setting forth three liens: One for materials furnished by it in the sum of $187.65, interest, costs and attorney's fees, a second, as assignee of defendant C. P. Schierholz in the sum of $168, with interest, costs and attorney's fees; and a third lien as assignee of defendant, W. R. Curtis, for $145 with interest, costs and attorney's fees. All the other defendants made default.

The case was assigned for trial to Judge GEORGE ROSSMAN, but the service not being complete upon the present owner Wm. B. Fellows, it was stipulated that a portion of the testimony should be taken at that time and the case adjourned until a future date for completion. In the meantime Judge ROSSMAN was appointed as Associate Justice of the Supreme Court and the case was reassigned to Judge HAMILTON. By the stipulation of the parties the testimony taken before Judge ROSSMAN was read into the record by the official reporter, as we understand, for the information for the then trial Judge.

Different attorneys appeared before Judge ROSSMAN than at the time of the final hearing and some confusion was caused by the transposing of the testimony as to names of attorneys and the marking of exhibits.

It is shown by the plaintiff that material and labor were furnished in the construction of the building on the lot described under contract with Hilton Realty & Construction Company who had the contract with Lucian T. Robinson, as owner, for the construction of the building, the reasonable value of such labor and material being $299.79, for which a notice of lien was filed on January 2, 1927, and recorded on that date; that the building was not completed at the time the lien was filed. The construction of the building was commenced in September, 1926, and the work proceeded until some time in December, when the last work of lathing was performed by W. R. Curtis, the exact date of which does not clearly appear.

It is claimed on behalf of defendants that the construction of the building was abandoned by the contractor, the Hilton Realty & Construction Company

and that the lien of plaintiff was not filed within the statutory time of thiry days after such abandonment and it seems the trial court so held.

The only question of merit in this case is that relating to the abandonment or cessation of the work upon the house. Plaintiff submits that when the erection of a building, in course of construction, is abandoned by the contractor and owner, and the building therefore considered to be completed, that the time of the abandonment is not to be determined by the secret mental process of the contractor and that the testimony does not show a permanent abandonment of the construction of the building thirty days before plaintiff's lien was filed.

It is shown by the testimony that the owner made an arrangement with the Hilton Realty & Construction Company to construct a house on the lot and deeded the lot to the realty company, but the deed was not to be recorded. That, when the house was completed, then a deed was to be made back to Lucian T. Robinson. The mother of Lucian attended to the business relating to the building during his absence. Lucian Robinson executed a mortgage on the lot and paid the contractor about $1,400. The realty company had under construction, at the same time, two other buildings and during December it was short of funds. When Mr. Curtis, the lather, completed his work and a short time thereafter applied to Mr. Gibson, the president of the realty company, for his pay, Gibson "stalled" him and after Curtis had left the office, he took the witness Pollock, who was secretary of the realty company, into the office and said, "I guess we will have to throw up the Robinson job." This was in December, 1926. That thereafter Gibson was trying to get money to finance

the work. This is the abandonment relied upon by defendants in this case. The defendants did not plead an abandonment in either answer.

The plaintiff had no knowledge or notice of any abandonment or intent to abandon the work by the contractor. It is shown by plaintiff that the work done on the building by it consisted of plumbing, and that plumbing materials were furnished. That part of the plumbing done was what was termed "roughing in work" which was completed about November 1st, and then according to custom the plumbing work ceased until the building was completed, except as to the finishing of the plumbing, which is usually forty or sixty days after the first plumbing work. This would take until the last day of December before the plaintiff would naturally expect notice from the contractor to complete the plumbing.

Mrs. Cloa Robinson, as a witness for defendants, testified, in part, to the effect that on account of finances, "after about the middle of November, we were through. I just left it with Mr. Abry and Mr. Hilton to do that because we couldn't do anything, the way things were tied up and the mess that it was in." That they had to let the lot go. Mrs. Robinson, upon being asked if she ever abandoned the construction of the home, and when, stated: "It was the Hilton Construction Company was supposed to finish that house, because we wasn't fixed in any way, our circumstances, to finish it. * * It was the construction company and the mortgage that was supposed to take care of it." That was before the house was lathed that she reached that conclusion. It is shown that in the first instance, the arrangement was that the Hilton Realty & Construction Company was to do the building and the mortgage company

to do the financing. It appears that the realty company obtained $1,400 out of the transaction but failed to pay its bills.

On December 4, 1926, the Hilton Realty & Construction Company executed a warranty deed of the lot to defendant Wm. B. Fellows. The deed was recorded on the next day. Thus it appears that after the Robinsons lost interest in the lot and contract for a time the owner and contractor was one and the same person. After the deed to Mr. Fellows, it is shown by the testimony that he superintended the work on the building. Therefore, there is no question but that the performance of the work and the installation of the materials in the building at all times were assented and agreed to by the owner of the premises. There is no testimony in the case definitely indicating that the Hilton Realty Company or William B. Fellows, the last owner, intended to abandon the building, which had not been completed at the time of the trial. There were a few shingles to be put on the outside; the windows were not in, but the casings were, and the window jambs were set. The house was lathed ready for plastering, but was not plastered.

We have the expression made by the president of the realty company, that while he was still trying to obtain money with which to advance the construction, that he "guessed" he would have to relinquish the job; and so secretly informed the secretary of the company. There was no indication or notice to the plaintiff, who was the plumber, and who was apparently expecting to finish his work of plumbing as soon as the other work of construction was completed. In fact, instead of there being an abandonment of

the construction there was merely a change of ownership of the building.

A cessation of work often occurs for various causes, such as strikes, financial difficulties and often the contractor will have several contracts for construction of buildings progressing at the same time, and will leave one to work on the other.

■ In order to constitute a permanent abandonment of the construction of the building, so that the same would take the place of the completion mentioned in the statutes, there should be a cessation of operation and an intent on the part of the owner and contractor to cease operations permanently, or at least for an indefinite period, or some fair notice to or knowledge of the abandonment by a lien claimant, either actual or implied.

■ Since the briefs were prepared in this case, this question was discussed by Mr. Justice Rossman in the case of *Eastern & Western Lumber Co.* v. *Williams, ante,* p. 1 (276 Pac. 257, at page 259), where the following language is recorded:

"Facts which will constitute an abandonment must include a conclusion, upon the part of the participants, to cease operations permanently, or at least for an indefinite period. (*James A. C. Tait & Co.* v. *Stryker* [117 Or. 338 (243 Pac. 104)], *supra; Shaw* v. *Stewart* [43 Kan. 572 (23 Pac. 616)], *supra; Nicolai-Neppach Co.* v. *Poore,* [120 Or. 163 (251 Pac. 268)], *supra.*) Thus a mere cessation of labor is not an abandonment. The setting of the sun generally causes a cessation of labor for the night; unfavorable weather conditions may halt construction for a longer period; similar interruptions may come from labor troubles or the lack of materials. In each of these instances no one has concluded to abandon the project. Similarly in the suit before us the lack of money caused a cessation of work, but was unac-

companied with a conclusion to abandon the project. We conclude that there was no abandonment equivalent to completion.''

We think that there was no permanent abandonment of the building within the meaning of the law, so as to affect plaintiff's lien, occurring thirty days prior to the filing of this lien.

Section 10191, Or. L., gives every mechanic, artisan, machinist, builder, contractor, lumber merchant, laborer, teamster, drayman and other persons performing labor upon, or furnishing material to be used in the construction of any building, a lien upon the same for the work or labor done or material furnished, at the instance of the owner of the building, or his agent. This section enumerates the proceedings to be taken to lay the foundation for and protect such lien.

Section 10195, Or. L., requires a person, other than the original contractor claiming the lien, within thirty days after the completion thereof, or after he has ceased to labor thereon from any cause, or after he has ceased to furnish materials therefor, to file with the county clerk of the county a claim or notice of his lien.

It was held in *Tait & Co.* v. *Stryker,* 117 Or. 343 (243 Pac. 104), that the time upon which a notice of lien may be filed begins to run from the time of the permanent abandonment of the work of erecting the building. In so far as we are advised, the question of what constitutes such an abandonment had not been determined by this court when the briefs were prepared in the instant case. It will be noted in the *Eastern & Western Lbr. Company* case, above cited, that an abandonment must include an intent or conclusion upon the part of the *participants,*

not only one but more than one. It takes two parties to make a contract and it would seem that in cases of this kind in order to abrogate a contract for building, so as to affect the lien claims, we should consider the matter from the standpoint of the owner, as well as the contractor; in other words all of the facts must be taken into consideration. To hold that, when there was a mere cessation of labor (after the date fixed by the trial court as December 14, 1926), and the president of the realty company privately informed the secretary of the company that he was contemplating abandoning the job, constituted a permanent abandonment of construction, and that the time for filing the lien should run from the time of such cessation, would not be giving the lien claimant an opportunity to file his lien equal to that provided by the statute.

Its lien was filed about four days after it was informed by Mrs. Robinson that there were financial hindrances in relation to completing the building, and it is claimed by defendants that the lien was filed seven days late.

In a few jurisdictions statutes regulate the question with which we are dealing: 40 C. J. 192, § 224. The matter of knowledge of the lien claimant is an important factor. In the case of *Tait* v. *Stryker, supra,* it was mentioned that the lien claimant was notified by the owner not to deliver any more materials. In the present case, there is no testimony in the record that Fellows, the owner of the building at the time the last work was done on the same about December 14 1926, or at any time intended or concluded to abandon the construction of the house, so that the case comes fairly within the opinion above

quoted from in the case of *Eastern & Western Lbr. Co.* v. *Williams.*

In *Main etc. Co.* v. *Horton etc. Co.,* 56 Kan. 448, 454 (43 Pac. 769), the subcontractor furnished items insignificant in amount after the contractor had abandoned the construction contract with the knowledge of the owner who failed to notify the subcontractor. It was held the time for filing a lien commenced to run after doing the last work or the furnishing of the last item of material before notice of the abandonment. See, also, *Catlin* v. *Douglass,* 33 Fed. 569; *Naughton* v. *Nicholson,* 97 Mo. App. 332 (71 S. W. 64); *Pedretti* v. *Stichtenoeth,* 6 Ohio C. C. 516.

The testimony in the case does not show a permanent abandonment of the work of erecting the building more than thirty days prior to the time of filing of plaintiff's lien. The amount of the lien is not questioned and should be allowed, together with the sum of $75 as attorney's fees and satisfied concurrently with the other valid liens of defendants.

It is contended by plaintiff that the liens set up by Rowell Brown & Company were not proved. It is claimed that there was no proof that the notice of lien was ever filed for record. The lien notice was introduced in evidence. The abstract of title, which was stipulated to be introduced in evidence, shows that the lien was recorded on December 29, 1926. There is no merit in the contention of plaintiff.

In relation to the Curtis lien, it is claimed by plaintiff that the certificate of recordation on the back of the lien notice was not introduced in evidence at the time of offering the instrument. This is immaterial as the same abstract of title shows that the Curtis lien was recorded December 29, 1926. It was fur-

ther contended by plaintiff that the lien of Rowell, Brown & Company was not introduced in evidence or shown to be recorded. The lien notice was proposed to be introduced by Mr. Green an attorney in the case. The lien was admitted by Mr. Hilton, attorney for one of the lien claimants at that time. Hence, the lien was regularly admitted in evidence by stipulation binding upon the clients of Mr. Green and Mr. Hilton.

■ There was a further stipulation in the record duly made by the attorneys of record in the case, that all of the testimony, either beneficial or detrimental, offered by any person in this case might inure to the benefit of all the other lien claimants and parties to the suit. This rendered such testimony competent as to all of the parties. The objection to the testimony is not well taken. The contention in this respect is groundless.

The decree of the lower court will therefore be modified, by granting the prayer of plaintiff's complaint for a decree against the Hilton Realty Construction Company for the sum of $299.79, with interest from January 21, 1927, at 6 per cent per annum; the further sum of $1.10 for recording said lien and for the further sum of $75 attorney's fees in this suit and for plaintiff's costs; and that plaintiff's lien be foreclosed and satisfied concurrently or *pro rata* with the liens of defendant Rowell Brown & Company.

MODIFIED. OBJECTIONS TO COST BILL DENIED.

COSHOW, C. J., and BROWN and BELT, JJ., concur.