449 P.2d 31

HAYWARD LUMBER & INVESTMENT COMPANY, a corporation, and Pioneer Plumbing Supply Company, an Arizona corporation, Appellants,

v.

Arthur E. (Bud) GRAHAM and Lucille L. Graham, husband and wife, Appellees.

No. 7905.

Supreme Court of Arizona.
In Division.
Dec. 27, 1968.

Benton & Case, by Williby E. Case, Jr., Brandt & Baker, by Thadd G. Baker, Yuma, for appellants.

Rolle, Jones & Miller, by Everett L. Miller, Yuma, for appellees.

LOCKWOOD, Justice.

Arthur Graham, hereinafter referred to as Graham, leased approximately four acres of unimproved land to the Arizado Resort Corporation, hereinafter referred to as Arizado. Arizado bought materials and supplies from the Hayward Lumber Company, the Pioneer Plumbing Supply Company, and Elm Wholesale, hereinafter respectively

referred to as Hayward, Pioneer, and Elm which were used in improving the leased property. After ninety per cent of the improvements were completed, the lease was terminated at the instance of the lessor, and the property and improvements were repossessed by him. Pioneer filed a mechanics' lien against the property and improvements on May 1, 1961. Hayward filed a lien on June 23, 1961, and Elm filed a lien on August 7, 1961. Thereafter Pioneer brought action to perfect its lien, and Graham filed a quiet title action against each of the lien claimants, who in turn, filed counterclaims setting up their mechanics' liens. The two cases were consolidated for trial and judgment was rendered in favor of the lessor, Graham, on his quiet title action. Personal judgments were rendered against Arizado in favor of the lien claimants on their counterclaims. The court denied all liens as to both the improvements and the realty. The trial court found that the work of construction was abandoned on April 1, 1961, and therefore the liens of Pioneer and Elm were not timely. The trial court also held that the lessee (Arizado) was not the agent of the lessor (Graham) and that the facts of the case did not take it out of the general rule that improvements at the instance of the lessee are not effective to bind the lessor's interests to the mechanics' and materialmen's liens.

Only Hayward and Pioneer have appealed from the judgment denying their liens. Proper disposition of this appeal requires examination of three questions.

1. Under the facts of this case, can the lessor's interest be subjected to the mechanics' liens under any theory of implied agency or estoppel?

2. If only the lessee's interest is subject to the mechanics' liens, what is the extent of that interest?

3. Can the trial court's finding of abandonment on April 1, 1961, be sustained? We will consider this question first.

■ A.R.S. § 33–993 requires the present lien claimants to file a copy of notice and claim of lien with the county recorder "within sixty days after the completion" of the building or improvement. Both the appellants and the appellees agree that such notice must be filed within sixty days of abandonment of the work of construction to be effective, because abandonment is treated as completion for purposes of determining the time within which the claim must be filed. Raymond v. Agren, 44 Ariz. 327, 36 P.2d 797 (1934).

■ The real question raised here is whether the evidence is sufficient to show abandonment on April 1, 1961. The only evidence that would indicate the date of abandonment was testimony by the lessor, Graham, to the effect that work had ceased as of April 1. Also, the testimony of Donald Wayne Brasch, an employee of the lessee, Arizado, was to the effect that the last construction was "about the middle of April". We hold that this evidence is not sufficient to sustain a finding of permanent abandonment on April 1, 1961, and that the trial court erred in denying the lien claim of Hayward as not timely.

In Stark-Davis Company v. Fellows, 129 Or. 281, 277 P. 110, 64 A.L.R. 271 (1929), the Oregon Court, construing a statute substantially comparable to Arizona's, held that:

"In order to constitute a permanent abandonment of the construction of the building, so that the same would take the place of the completion mentioned in the statutes, there should be a cessation of operation, and an intent on the part of the owner and contractor to cease operations permanently, or at least for an indefinite period, or some fair notice to or knowledge of the abandonment by a lien claimant, either actual or implied."

\* \* \* \* \* \*

" 'Facts which will constitute an abandonment must include a conclusion, upon the part of the participants, to cease operations permanently, or at least for an indefinite period. [citing cases] Thus a mere cessation of labor is not an

*abandonment.'*" (Emphasis supplied.) 277 P. at 112.

See also, 64 A.L.R. 276, entitled *Abandonment of construction or of contract as affecting time for filing mechanics' liens.*

The New Mexico Court had opportunity to examine the question of abandonment in Allison v. Schuler, 38 N.M. 506, 36 P.2d 519, 523 (1934):

> "We indicated in the Hot Springs Plumbing & Heating Co. case, supra, that anything short of permanent abandonment would not start the running of the time within which a lien claim must be filed, and that suspension of work must be accompanied by an intention to cease work or cease furnishing materials permanently, or at least indefinitely, would be necessary to constitute abandonment. We there displayed a leaning toward the Oregon rule, and cited Eastern & Western Lumber Co. v. Williams, 129 Or. 1, 276 P. 257. That decision was shortly afterwards followed in Stark-Davis Co. v. Fellows, * * *."

The writer of the annotation of this subject in 64 A.L.R. at page 283 stated the following:

> "Whether or not there is an abandonment within the meaning of the rule by which abandonment is deemed equivalent to completion as regards the time for filing mechanics' lien claims is often a difficult question. It has been held that *abandonment of the work will not be presumed where the right to a mechanics' lien is in question, but must be established by the evidence;* * * *." [Citation in footnote, Feick v. Stephens, 250 F. 185, 162 C.C.A. 321, (1918)] (Emphasis supplied.)

At page 277 of the annotation the writer also states that:

> " * * * there is direct authority to the effect that, in determining the question when a work is completed or abandoned, as regards the rights of parties to file or assert mechanics' liens, the court should not take a technical and narrow view, but should save to parties entitled to liens any rights they may justly have under a fair and equitable construction of the facts and the law applicable thereto."

The real party interested in the work of improvement was the lessee. The amendment to the lease, executed April 11, 1960, provided that:

> "During the term of this lease, Lessee has the right to place such improvements upon the demised premises as may be considered necessary for the conduct of its business. Upon the termination of the lease or at any time during the term of the lease, provided Lessee has complied with all terms and conditions of said lease, Lessee may remove, improve, restore, replace or otherwise alter the leased premises and the improvements placed thereon, *and at all times the improvements placed upon the premises by Lessee shall belong to and remain the property of Lessee.* Lessee agrees that should any buildings or other improvements be removed, that the premises will be restored to a clean and neat condition and that debris, foundations, and other traces of the improvements will be removed so that the premises will be restored as close as is reasonable to the original condition." (Emphasis supplied.)

Since the work was done at the instance of the lessee, and since he was the real person interested in the construction, it was his intention to abandon that is important. Mere cessation of labor without evidence of an intent to abandon on the part of the lessee, is insufficient to constitute permanent abandonment with which to begin the period of limitation for the filing of mechanics' liens. This conclusion does no injustice to the lessor, because his rights are protected at all times. The purpose of the time limitation would be to protect the interest of the lessee, at whose instance the work is being done.

The record of this case indicates other facts which show that the lessee did not intend to abandon the work of improve-

ment on April 1st. A luau was held on April 1, 1961 by the lessee for the purpose of selling stock in Arizado. The whole purpose of the stock sale was to further finance the work of improvements. At least on April 1st, there was no intent by the lessee to abandon the improvement. The lessee continued to remain on the leased property until "the end of May or the first of July" and had paid delinquent rental through the first of May. Thus the only evidence bearing upon the question of the lessee's intent is to the effect that there was no intent *on his part* to abandon the improvement on April 1, 1961. We thus hold that in the absence of evidence of an intent on the part of the active participant to abandon the work of improvement, there can be no finding of permanent abandonment as a matter of law.

██ We believe the trial court was correct in denying the liens against the lessor's interests. The lease involved in this case allowed the lessee to build on and improve the property, but only to the extent that it did not create a lien against the lessor's interests. The lien claimants concede that "ordinarily a lien for material used on leased premises by the lessee is not good against the interest of the lessor, even though the latter may have known of, or even acquiesced in, the use of the material." Mulcahy Lumber Co. v. Ohland, 44 Ariz. 301, 303, 36 P.2d 579 (1934). The Court in Mulcahy also stated that:

"In most of those [cases] where the statute is similar to ours the substance of the decisions seems to be that where a tenant is compelled by the terms of his lease to make certain improvements, he is, as a matter of law, thereby created the agent of the lessor for that purpose, so far as the lien laws are concerned." 44 Ariz. at 304, 36 P.2d at 580.

The Court distinguished the cases where the lessee had the option to build from the cases where he had an obligation to build, and held that where there was a mere option to build, no agency would be implied.

This Court examined the question of implied agency in Canyon State Canners · v. Hooks, 74 Ariz. 70, 73, 243 P.2d 1023, 1024, 1025 (1952). The test used in that case in finding an implied agency is

" 'If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, * * *.

* * * * * *

" 'An implied agency must be based on facts * * * such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as *naturally lead another to believe in and to rely on the agency.' "
(Emphasis supplied.)

The facts of the present case do not indicate that there was any assent. The express terms of the lease prohibited any improvement to the extent that it would create a lien.

 There is a great deal of evidence of acts by the lessor, Graham, that could have led others to rely on the fact that the lessee was acting as Graham's agent. But, for this Court to find implied agency, the party alleging agency must show reliance on acts from which the agency could be inferred. Canyon State Canners, supra. Also, to find estoppel there must be clear and convincing evidence that the lien claimants were led to believe in and rely on the authority of the lessee to bind the lessor's interests. Knight v. Rice, 83 Ariz. 379, 321 P.2d 1037 (1958). We find no evidence in the record that would warrant either a reasonable belief in or reliance on such authority, nor is there any evidence to show reliance in fact.

On the whole record, we are of the opinion that the claimants have failed to show that the lessee was either actually, or as a matter of law, the agent of the lessor so

as to establish a lien on the lessor's interest.

■ Having found that the building and improvements were at the instance of the lessee, only the lessees interests could be used to satisfy the mechanics' liens. Demund Lumber Co. v. Franke, 40 Ariz. 461, 14 P.2d 256 (1932).

The trial court denied the liens against both the improvements and the realty. The trial court seems to have been guided by the idea that if no lien could attach to the lessor's interest in the realty, then there could be no lien at all, including any possible lien on the improvements thereon. The Supreme Court of Montana was faced with this same problem, and held that the assumption was not justified. That Court, in Stritzel-Spaberg Lumber Co. v. Edwards, 50 Mont. 49, 144 P. 772 (1914) stated:

" * * * the lien is given primarily upon the building, structure, or other improvement, and extends to the land incidently." 144 P. at 772.

\* \* \* \* \* \*

"If, then, the lien of this plaintiff attached primarily to the building in the construction of which its materials entered, the failure of Edward's title to the lot upon which the building was situated did not affect the lien upon the building." 144 P. at 773.

The Supreme Court of California examined the same problem in the case of English v. Olympic Auditorium, Inc., 217 Cal. 631, 20 P.2d 946, 87 A.L.R. 1281 (1933). The facts of that case are quite similar to the facts of the present case. The Court there stated:

"Having reached the conclusion that the lien upon the building exists separately from the land, the unlawful detainer action by which the respondents herein had the lease declared forfeited as to the Auditorium Company, and thus obtained possession of the property, becomes immaterial. However, the lease itself provides that the lessee may erect a building, and, further, that any improvements erected could not be removed by the lessee. Thus respondents have by their own voluntary acts made the building a part of their land, and therefore have taken the same, burdened with the liens of plaintiffs, and which liens do not depend upon the leasehold interest of the Auditorium Company." 20 P.2d at 950.

\* \* \* \* \* \*

"There can be no doubt that the equities are with the plaintiffs. [Mechanics and materialmen.] They have put into the building, in labor and material, many thousands of dollars for which they have not been paid, and the building has cost the respondents [lessors] nothing whatever. To turn it over to the defendants freed from the liens of plaintiffs would be grossly inequitable. * * * it is [not] necessary to give a strained construction to the law so that this costly structure may be given to the defendants without any return to the men who created it." 20 P.2d at 950.

The Oregon Court had opportunity to examine the Oregon mechanics' lien statute in Lemire v. McCollum, 246 Or. 418, 428, 425 P.2d 755, 759 (1967). The Court discussed the question of whether a lien could attach to the improvement without attaching to the land upon which the improvement was located. Under a statute almost identical to the Arizona statute, the Court indicated that where the improvements were at the instance of a person who owned less than a fee interest in the land, the lien would attach to the improvement even if it did not attach to the land. In Braden Company v. Lancaster Lumber Co., 170 Okl. 30, 38 P.2d 575 at page 577, 102 A.L.R. 230 (1934), the Oklahoma Court stated:

"We hold that when a laborer performs labor and when a materialman furnishes material for the construction of improvements on a lot under a contract with one who is not the owner of the lot, the laborer and the materialman have liens upon the improvements, separately from the real estate, which liens are su-

perior to a vendor's lien for the unpaid purchase price of the lot."

See also Benton v. Hill, 389 P.2d 501 (Okl., 1964). The problem of subjecting improvements to mechanics' liens where the owner of the improvement does not own the realty was discussed in 87 A.L.R. 1290 entitled *Termination of lease as affecting mechanics' lien on buildings erected by tenant where lien did not attach to landlord's title.* See also, 57 C.J.S. Mechanics' Liens §§ 184 and 188.

An examination of the pertinent Arizona Statutes relating to mechanics' liens indicates that the legislature intended to create a lien against the building or improvement, as well as a lien against the realty. A.R.S. § 33–981, subsec. A states:

"Every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement whatever, *shall have a lien thereon* for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, or his agent." (Emphasis supplied.)

This provision expressly gives a lien on the building or improvement, when work is done or materials furnished at the instance of the *owner of the building* or his agent. A.R.S. § 33–991, subsec. A states that:

"A. If the land upon which an improvement is made and labor has been performed lies outside of the limits of the recorded map or plat of a townsite, an incorporated city or town, or a subdivision, the lien shall extend to and include not to exceed ten acres of the land upon which the improvement is made and the labor has been performed."

Subsection B states that:

"B. If the land on which an improvement is made or labor has been performed lies within the limits of a recorded map or plat of a townsite, an incorporated city or town, or a subdivision, the lien shall extend to and include only the particular lot or lots upon which the improvement is made and the labor has been performed."

Thus the Arizona mechanics' liens apply to the building or improvement under § 33–981, and extend to the land under § 33–991.

The comparable Oregon Statute from which the Arizona Statute was taken is O.R.S. 87.005 et seq. The comparable provision is 87.010 which states:

"Any mechanic, artisan, machinist, builder, contractor, * * * or other person performing labor upon, transporting or furnishing any material to be used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation, or material furnished at the instance of the owner of the improvement or his agent."

O.R.S. 87.015 states:

"The land upon which any improvement is constructed, together with such space as may be required for the convenient use and occupation thereof, to be determined by the court * * * shall also be subject to the liens created under O.R.S. 87.010, if, at the time the work or the furnishing of the materials was commenced, the land belonged to the person who caused the improvement to be constructed. If such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to the lien."

As indicated in Lemire v. McCollum, supra, these statutes have been construed by the Oregon Court to mean that if the owner of the building, at whose instance labor was done or materials were furnished, did not own the land, then the lien would at least attach to the building and it could be used to satisfy the lien claimants.

█ We believe that it was the intent of the legislature to give mechanics and materialmen a lien against the building primarily, and incidentally against the realty. Where work is done on a building or improvement at the instance of an owner of the building or improvement, who does not

**110**

own the realty upon which the improvement is located, we believe it was the intention of the legislature that the liens of mechanics and materialmen should extend to such improvement, and that such improvement should be held to satisfy lien claims against it.

The distinction between a lien upon the improvement, and a lien upon the land, was discussed in Humboldt Lumber Mill Company v. Crisp, 146 Cal. 686, 81 P. 30 (1905). That case involved an attempt by mechanics to enforce liens against the land. The structure being built thereon was burned before completion and before any lien had been filed. In denying the lien, the court construed the comparable provisions of the California statutes:

"The first of these sections gives a lien 'upon the property upon which they have bestowed labor or furnished materials.' The second section cited says that certain land 'is also subject to the lien.' In these provisions we see an intention of the Legislature to make the lien on the building the principal thing, and the lien upon the land on which it is situated an incident of the completion of the building, and that, when the building is destroyed before completion, there can be no lien against the land on which it was being erected; * * *." 81 P. at 31, 32.

In Western Electric Co. v. Cooley, 79 Cal. App. 770, 251 P. 331, 335 (1926) the court said:

" 'Lien claimants are given a lien "upon the property upon which they have bestowed labor or furnished materials," as well as upon the land upon which any building, improvement, well, or structure is constructed, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, if at the commencement of the work or the furnishing of materials the land belonged to the person causing the improvement to be undertaken; *if he owned less than a fee*, only his interest is subject to the

lien, except as the owner of the fee may have failed to give notice of nonliability, as provided in section 1192 of the Code of Civil Procedure. Under these statutory provisions, the lien on the building, or other structure, is the primary thing, and the lien in the land is merely an incident to it. No lien can be acquired on the land, if none is acquired on the building, but a lien may exist on the building without attaching to the land. *Hence it is not essential to the existence of a mechanic's lien on a building that the person causing its erection should have owned or had any interest in the real property on which it is located.* This distinction between land and superstructure, the lien attaching primarily to the latter, and to the former only as it was embraced in a common ownership with the building, has existed in California from the very earliest times.' " (Emphasis supplied.)

As has been shown, the statutes of California, Oregon, and Arizona all contemplate a lien upon improvements which extends to the land upon which the improvements are located. California and Oregon have both construed their statutes to provide a lien upon improvements separate from the land, if the owner of the improvements does not own the land. Where a statute is adopted substantially verbatim from another state, the construction given it by the courts of that state will be looked to as of persuasive force if reasonable. Western Coal & Mining Co. v. Hilvert, 63 Ariz. 171, 160 P.2d 331 (1945). This Court noted in Wylie v. Douglas Lumber Co., 39 Ariz. 511, at page 517, 8 P.2d 256, at page 258, 83 A.L.R. 918 (1932) that the language of our lien statute is substantially similar to the California statute and, therefore, "the construction placed thereon by the California courts should be very persuasive, if not controlling." (See also, DeVry Brick Co. v. Mordka, 96 Ariz. 70, 391 P.2d 925 (1964)).

We believe that the construction placed on comparable statutes by the Oregon and California Courts is reasonable,

because it protects mechanics and material-men who supply material and perform labor while at the same time it protects the interest of the owner of realty from being subjected to liens for work done at the instance of lessees or other persons having no interest in the realty. It prevents the unjust enrichment of lessors at the expense of mechanics and materialmen who extend credit to lessees in the improvement of the leased property. It would be manifestly unjust to construe the mechanics' lien statute as denying a lien on improvements merely because such lien cannot extend to the land upon which the improvements are located. We indicated in Feffer v. Bowman, 90 Ariz. 48, 365 P.2d 472 (1961) that the purpose of a statute will not be frustrated or thwarted by a literal application of its terms. We thus hold that the trial court was wrong to deny the liens against the improvements.

Reversed and remanded to the lower court for such further proceedings as are not inconsistent with this decision.

McFARLAND, C. J., and STRUCK-MEYER, J., concur.