# TRI-CITY BUILDING CENTER, INC., *Appellant,*
## *v.*
## WAGNER et al, *Respondents.*
### 548 P2d 961

*Robert Lohman,* West Linn, argued the cause and filed a brief for appellant.

*Gary M. Bullock,* Portland, argued the cause and filed a brief for respondents.

HOLMAN, J.

## HOLMAN, J.

This is a suit to foreclose a materialman's lien. Plaintiff appeals from a decree which held the lien to be invalid.

Defendant Reese purchased on contract from the defendants Wagner property in an industrial park as a site upon which to construct a building for his auto parts business. The other defendants are not material to this appeal. Reese undertook to be his own general contractor in the construction of the improvement. As a result, there was no contract let for all of the work involved. The improvement authorized by the building permit granted to Reese required the construction of the building, parking area, landscaping and a site-obscuring fence.

Construction commenced in late August or early September. Reese entered into a contract with American Wallboard Company (American) to install wallboard in the interior of the building. American purchased the material for the job from plaintiff and although Reese advanced the money with which American was to pay for the material used, plaintiff contends its account was never paid. American completed its contract on November 28, 1973. Reese was in the building in early December, using it as his place of business, and the *building* was substantially completed as of that date. Plaintiff filed its lien January 31, 1974.

Work on blacktopping the parking area, the site-obscuring fence and the landscaping was delayed for two reasons: (1) the county had not yet installed the street, therefore, the grade had not been established to which the said improvements had to conform; and (2) the ground was saturated with water, thereby making work on said improvements impossible. The defendant Reese testified:

"Q When was the building completed? And explain the progress work that went along on the building.

"A The slabs and the forms were completed in early September. The building, the structure itself, went up through September, and the first part of October we began the framing. The building was basically complete with the exception of the landscaping and the asphalt, which the County had yet to put the street in, and no curbs; and we were just unable to do those items, and we had a tremendous amount of problems with mud. The instability of the ground wouldn't permit us to install the landscaping and the curbs and the asphalt.

"* * * * *.

"Q Now you referred to the outside as far as landscaping, fencing and streets. Are you saying that the County had to put a street in?

"A Without a street in there, we had no definition of grade so we could install the things that were required by the County to get the final approval. I had to have in the asphalt, the parking, the landscaping and all these other items, and it was impossible to do those until the street was complete."

There is no evidence when the site-obscuring fence and the landscaping were installed; but evidence does indicate that the blacktopping was not done until the following summer.

The first issue is whether plaintiff filed its lien within the time required by statute. Defendants claim the time for filing is governed by the date of the completion of the building, whereas plaintiff claims it is determined by the date of the completion of the project, including the blacktopping, site-obscuring fence and landscaping. ORS 87.010(1)[1] provides:

"Any * * * person * * * furnishing any material to be used in *the construction of any improvement* * * * shall have a lien upon the improvement for the * * * material furnished * * *."

ORS 87.005(1) defines "improvement" as follows:

" *'Improvement' includes any building,* wharf, bridge, ditch, flume, reservoir, well, tunnel, fence, street,

---

[1] A revision of the mechanic's lien law was enacted by Oregon Laws 1975, ch 466. All statutory references are to the laws as they existed prior to revision.

sidewalk, machinery, aqueduct *and all other structures and superstructures, whenever it can be made applicable thereto.*"

ORS 87.035 provides the time within which a lien must be filed:

> "\* \* \* [E]very \* \* \* person, except the original contractor, claiming the benefit of ORS 87.005 to 87.075, within 45 days after *the completion of the construction,* \* \* \* or after he has ceased to furnish materials therefor, shall file for recording \* \* \* a claim \* \* \*."

ORS 87.005(2) defines "construction" as follows:

> " 'Construction' includes alteration, partial construction and all repairs done in and *upon any improvement.* "
> (Emphasis in all the foregoing statutes added.)

■ The issue resolves itself into a problem of how the parameters of an improvement are determined for the purpose of deciding when it is complete and, thus, when the time for filing a lien starts to run. A materialman normally does not have knowledge of the completion of an entire improvement because he is not in close contact with the job after he delivers his materials, nor does he usually have knowledge of what the owner and contractor intend. It would, therefore, seem logical to commence the running of the time for filing a materialman's lien from the last delivery of materials because this is a date of which the materialman is aware. However, the legislature has seen fit to provide, as an alternative time for filing, the period within 45 days of completion of construction of the improvement, an entirely fortuitous event insofar as the materialman is concerned and one of which he has no control and, normally, little knowledge. This would indicate a general policy of broadening, rather than narrowing, the opportunities for the filing of liens.

■ We have been unable to find any Oregon cases directly in point. The closest analogy is where construction is abandoned. Abandonment is treated as completion in the computation of the time within which liens may be filed and is determined by the

intent of the owner or general contractor. *Block v. Love et al,* 136 Or 685, 688-89, 1 P2d 588 (1931); *Pacific Coast S. Co. v. Construction Co.,* 130 Or 225, 229, 279 P 848 (1929); *Stark-Davis Co. v. Fellows et al,* 129 Or 281, 286-87, 277 P 110, 64 ALR 271 (1929); *James A. C. Tait & Co. v. Stryker,* 117 Or 338, 342, 243 P 104 (1926). In one of the above cases the time between the cessation of work and the filing of the lien was more than a year, and, in another, work had been interrupted for two years, yet the lien was upheld. In *Eastern & Western L. Co. v. Williams et al,* 129 Or 1, 8, 276 P 257 (1929), the court said as follows:

"Facts, which will constitute an abandonment, must include a conclusion, upon the part of the participants, to cease operations permanently, or at least for an indefinite period: [citations]; thus a mere cessation of labor is not an abandonment. The setting of the sun generally causes a cessation of labor for the night; unfavorable weather conditions may halt construction for a longer period; similar interruptions may come from labor troubles or the lack of materials. In each of these instances, no one has concluded to abandon the project. Similarly in the suit before us, the lack of money caused a cessation of work, but was unaccompanied with a conclusion to abandon the project. We conclude that there was no abandonment equivalent to completion."

It is not unusual to permit the filing of a lien upon a building which has its basis in construction of improvements adjacent thereto which are to be used with the building. The provisions of the statutes indicate an intention to treat as an "improvement" the building and "all other structures" which "can be made applicable thereto." This would include the blacktopping and the fence. In *McCormack v. Bertschinger,* 115 Or 250, 237 P 363 (1925), plaintiff furnished work and materials for the construction of a dwelling house, as well as of a garage, driveway, walks connected with the house and a retaining wall, for which he filed a lump sum lien. The lien was upheld despite a contention that as to the residence the other items were nonlienable. In the present situation any lien timely filed

[ 586 ]

upon the building would also have resulted in foreclosure upon the blacktopping, landscaping and fence as "such space as may be required for the convenient use and occupation" under ORS 87.015.

Although, as indicated, none of the above are directly in point, the analogies are used to demonstrate that, for most purposes, if it is intended that a building and its adjoining improvements be immediately constructed in logical order, and if all improvements are necessarily used together in the occupancy of the building, such improvements are usually treated as unitary for mechanic's lien purposes. It is our opinion that the legislature intended that where improvements must necessarily be used as a unit and all are intended to be immediately constructed, temporary interruptions beyond the control of the owner or builder, even those of considerable duration caused by winter weather, strikes, unavailability of materials, or similar conditions, should not interrupt or terminate the time within which to file mechanic's liens. It is our conclusion that it was the intention of Reese, acting as his own contractor, to complete the project as expeditiously as possible and that an interruption because of weather and/or delay by the county in putting in the street did not destroy the unitary nature of the improvements for the purpose of computing the time within which liens could be filed. Plaintiff's lien, having been filed before completion of the project, was timely filed.

The next issue in the case is the claimed inadequacy of the ten-day notice of the furnishing of materials by plaintiff, as required by ORS 87.020(1). The statute provides:

"* * * [A]ny person furnishing any material or supplies to be used in the construction of an improvement shall, not later than 10 days after the date of delivery to a contractor * * * of the material or supplies for which a lien may be claimed under ORS 87.010, deliver in person, and evidence the delivery by receipt thereof, * * * to the owner or reputed owner of the property on or about

[ 587 ]

which the material or supplies are to be used, a notice in writing stating in substance that such person is delivering material and supplies for use thereon, * * *. No materialmen's lien for material or supplies furnished to the contractor * * * shall be enforced unless such notice is given."

The notice was sent by plaintiff both to the Wagners, the contract vendors, and to Reese, the contract vendee. However, both notices were sent to the Wagners' address, but the evidence indicates that Reese never, in fact, received the notice nor did he have any knowledge of it. The non-payment for the materials came as a complete surprise to him because, prior to their purchase, he had advanced the money to American to pay for them.

No evidence discloses the reasons Reese's notice was sent to the Wagners' address. There is no indication what effort, if any, was made by plaintiff to learn Reese's address. The contract of sale was recorded and the address both of the sellers and of the purchasers appears therein. In the absence of any explanation for mailing Reese's notice to the Wagners' address, we must hold that the notice was insufficient as to Reese and that plaintiff's lien may not attach to his interest in the property.

■   This leaves the question whether the Wagners' interest in the land as vendors is subject to plaintiff's lien. Defendants claim it is not. ORS 87.015(1) provides:

"The land upon which any improvement is constructed, * * * shall also be subject to the liens created under ORS 87.010, if, at the time the work or the furnishing of the materials was commenced, the land belonged to the person who caused the improvement to be constructed. If such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to the lien."

This statute, when read alone, would indicate that the interest of the Wagners in the land would not be subject to plaintiff's lien because the Wagners did not

cause the improvements to be constructed. However, ORS 87.015(1) cannot be read alone. It must be read together with ORS 87.030, which is as follows:

"Every improvement * * * constructed upon lands with the knowledge of the * * * person having or claiming any interest therein, shall be deemed constructed at the instance of such * * * person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed pursuant to the provisions of ORS 87.005 to 87.075, unless such * * * person having or claiming an interest therein shall, within three days after he obtains knowledge of the construction, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon the land or the improvement situated thereon."

There can be no doubt of the Wagners' knowledge of the construction and of the materials furnished because they received notice of plaintiff's delivery of materials. The Wagners did not post the three-day notice of non-responsibility required by ORS 87.030. The statutory scheme assumes the construction was done at the direction of the Wagners since they had knowledge of the construction and did not post the notice of non-responsibility. In such a circumstance, the statute provides that their interest in the land is subject to the lien.

Defendants argue that the Wagners' interest in the property, that of contract vendors, is personal property under the doctrine of equitable conversion and there can be no mechanic's lien under ORS 87.010 on personal property. This court has previously treated the interests of contract vendors as coming within the purview of the statutes above set forth. *Barr v. Lynch et al,* 163 Or 607, 97 P2d 185 (1940); *Gabriel Pow. & Sup. Co. v. Thompson,* 163 Or 623, 97 P2d 182 (1940); *Schram v. Manary,* 123 Or 354, 260 P 214, 262 P 263 (1927); *Randolph v. Christensen et al,* 124 Or 661, 265 P 797 (1928) (dictum); *cf. Edmiston v. Kiersted,* 140 Or 299, 12 P2d 299 (1932). The following language is

[ 589 ]

found in Galen, *Mechanics' Liens in Oregon,* 29 Or L
Rev 308, 322 (1950):

"* * * [B]oth a lessor and a vendor of land are owners
within the meaning of this section [ORS 87.030]. Thus,
the court has held that, where a lessee or a vendee in
possession contracted for the improvement of the real
property, liens may be enforced against the interest of
the lessor or vendor if sec. 67-104 [ORS 87.030] has not
been complied with." (Footnote omitted.)

It is our conclusion that plaintiff's lien attached to the
interest of the defendants Wagner in so much of the
land as is necessary for the use and occupancy of the
building upon which the materials were used.

Another of defendants' contentions is that plaintiff
cannot prevail because plaintiff was paid for the mate-
rials by American and there is no money due and
owing to plaintiff. The owner of American testified he
paid plaintiff for them. He had no proof of payment,
however, and in view of his equivocation and the other
evidence in the case, his testimony appears to be a
patent lie. The trial judge placed his decision in favor
of defendants not upon the basis that American had
paid for the materials but, rather, on the basis that he
believed plaintiff's lien had not been timely filed.

The decree of the trial court is reversed and the case
is remanded with instructions to grant plaintiff a lien
upon the interest of the defendants Wagner, as ven-
dors, in that part of the land which is necessary to the
use and enjoyment of the improvements upon which
plaintiff's materials were expended.